BROOKLYN BUS CORPORATION, Respondent, *v.* CITY OF NEW YORK, Appellant.

Argued March 22, 1937; decided April 27, 1937.

*Paul Windels*, Corporation Counsel (*Joseph L. Weiner* and *Arthur A. Segall* of counsel), for appellant. The tax was not imposed by ordinance of the city or resolution of the Board within section 12 of the contract. (*City of New York* v. *Seely-Taylor Co.*, 149 App. Div. 98; 208 N. Y. 548; *Ebert* v. *Poston*, 266 U. S. 548; *Schweinburg* v. *Altman*, 145 App. Div. 377; 207 N. Y. 681.) Local Law No. 10 of 1934 does not impose a tax upon or in respect of the franchise granted or the exercise thereof. (*Matter of City of New York* v. *Prendergast*, 202 App. Div. 308; *New York Steam Corp.* v. *City of New York*, 268

N. Y. 137.) Franchise contracts, particularly with reference to taxes, are construed strictly in favor of the grantor. (*Metropolitan Street Ry. Co. v. Tax Commissioners*, 174 N. Y. 417; 199 U. S. 1; *Cleveland Electric Ry. Co. v. Cleveland*, 204 U. S. 116; *Public Service Co. v. Durham*, 261 U. S. 149.)

*Clarence J. Shearn, Charles C. Smith* and *George D. Yeomans* for respondent. Local Law No. 10 is an ordinance of the city within the meaning of section 12 of the contract. (*Rice v. Van Vranken*, 132 Misc. Rep. 82; *Matter of McAneny v. Board of Estimate*, 232 N. Y. 377; *Monroe Dairy Assn. v. Webb*, 40 App. Div. 49; *Armatage v. Fisher*, 74 Hun, 167; *People v. City of Buffalo*, 93 Misc. Rep. 275; 175 App. Div. 218; 220 N. Y. 715; *Southern Pacific Co. v. Western Pacific Ry. Co.*, 144 Fed. Rep. 160; *National Bank of Commerce v. Town of Grenada*, 44 Fed. Rep. 262; *Doehler v. Lansdon*, 135 Ore. 687; *Kersey v. City of Terre Haute*, 161 Ind. 471; *Stemmler v. Borough of Madison*, 82 N. J. L. 596; *Houvouras v. City of Huntington*, 90 W. Va. 245; *Brown v. Bedell*, 263 N. Y. 177.) Local Law No. 10 does impose a tax upon or in respect of the franchise granted or the exercise thereof. (*New York Steam Corp. v. City of New York*, 268 N. Y. 137.)

CRANE, Ch. J. The city of New York contracted with the Brooklyn Bus Corporation on June 4, 1931, about the operation of twenty stage or omnibus routes in the borough of Brooklyn, three of which extend into the borough of Queens. The contract is a formal printed document, executed by the city of New York through James J. Walker, its Mayor, and the Brooklyn Bus Corporation, by W. S. Menden, president. These buses were to be operated in conjunction with the trolley and subway lines for the convenience of persons living beyond the reach of those lines.

Article III, section 8, of the contract fixed the fares to be charged at the rate of five cents, and provided: " Actu-

ated by these mutual understandings and agreements, the Company hereby expressly agrees that if, without the consent of the Board evidenced by resolution the Company shall invoke any of the provisions of the Public Service Law   *   *   *   for the purpose of obtaining an increase of fare above that fixed and contained herein, or if, on the authority or claimed authority of any judicial decision heretofore or hereafter made, or otherwise, such Company shall without the consent of the Board evidenced by resolution, increase its rate of fare above that fixed and contained herein, this contract and the franchise, right and consent hereby granted shall immediately cease and determine."

The Board referred to in this contract is the Board of Estimate and Apportionment of the city.

By section 9 the company shall pay by way of compensation for the franchise an amount equal to five per cent of the gross receipts, which five per cent shall not be less than one hundred thousand dollars.

Section 12 is the one which governs this case, so I shall quote it in full: " No payments of compensation made to the City pursuant to the provisions of this Article shall be considered or construed in any manner as in the nature of a tax, but such payments shall be made in addition to any and all taxes of whatsoever kind or description, which now are or at any time may be required to be paid by any law of the State of New York.  Provided, however, that any new form of tax or additional charge that may be imposed by any ordinance of the City or resolution of the Board upon or in respect of the franchise hereby granted or the exercise thereof, resulting in an increase in the cost of operation and paid by the Company, shall be deducted from the compensation payable to the City hereunder for the current fiscal year."

On April 25, 1934, chapter 302 of the Laws of that year took effect.  Section 1 thereof reads in part as follows: " Notwithstanding any other provision of law to the contrary, any city of the state having a population of one

million inhabitants or more acting through its local legislative body, is hereby authorized and empowered until December thirty-first, nineteen hundred thirty-four to adopt and amend local laws imposing in any such city any tax and/or taxes which the legislature has or would have power and authority to impose and make provision for the collection thereof by the chief fiscal officer of any such city. The tax or taxes imposed pursuant to such local laws shall be effective only during the period commencing when this act becomes effective and ending December thirty-first, nineteen hundred thirty-four, or any portion of such period. [A tax imposed hereunder shall have application only within the territorial limits of any such city and shall be in addition to any and all other taxes."

Other parts of this chapter are equally important as bearing upon the question here presented, although not determinative thereof.

" No such * * * corporation, however, shall be subjected to the imposition of more than one tax by any such city on gross income or gross receipts under the provisions of this act.

" § 2. Revenues resulting from the imposition of taxes authorized by this act shall be paid into the treasury of any such city and credited to the general fund."

Although this act authorizes the city until December 31, 1934, to impose *any* tax which the Legislature would have power to impose, yet when it comes to taxing gross income this can only be done once. The second comment on this last quotation is to note that the proceeds of these local taxes are solely for local purposes; the money is not for the State, but for the city; the collections go into the general fund of the city.

With these things in mind, we approach the local law, which became effective June 7, 1934. It was enacted by the Municipal Assembly of the city of New York, and is certified by the City Clerk at the end as having passed both branches of the Municipal Assembly of the city of New York. Section 17 of the Greater New York Charter

(L. 1901, ch. 466, as amd.) provides that the legislative power of the city of New York, except as otherwise therein provided, shall be vested in one house, to be known and styled as the Board of Aldermen of the city of New York. For Local Laws the Board of Estimate is added. (City Home Rule Law [Cons. Laws, ch. 76], art. 2, § 10.) Section 2 of this Local Law (Local Law No. 10; Local Laws, 1934, p. 115) reads as follows: " Notwithstanding any other provision of law to the contrary for the privilege of exercising its franchise or franchises, or of holding property, or of doing business in the city of New York, for the balance of the calendar year nineteen hundred thirty-four, every person doing business in the city of New York and subject to the supervision of either division of the department of public service during such period, shall pay to the comptroller of the city of New York an excise tax which shall be equal to one and one-half per centum of its gross income for the period March first, nineteen hundred thirty-four to December thirty-first, nineteen hundred thirty-four. Such tax shall be in addition to any and all other taxes and fees imposed by any other provision of law and shall be paid at the time and in the manner hereinafter provided."

Under this local law the respondent was taxed upon its gross income, and paid the amount under protest. This action has been brought to recover it as an illegal payment and a violation of its franchise contract with the city. The determination of the question presented turns upon the meaning of the contract. Did the parties intend, and does the language justify the city to increase the amount which the bus company is to pay for the franchise to run its buses? The franchise is the municipal consent or authorization for the use of the streets by public conveyances. It is intangible property for which, under the charter, the city may require payment, and which may also be taxed by the State, and now under this local law may be taxed by the city. But what is it that is taxed by the city? It is the franchise, the right to use the street.

The local law recites that it is to raise revenue for the city of New York by imposing an excise tax on each and every corporation doing business within the city, and subject to the supervision of either division of the Department of Public Service. The only business done by the bus company is to exercise the right under its franchise, or permission to use the streets, and to charge a fare for running buses on the streets. It is subject to the supervision of the Department of Public Service. This right or this franchise, however, has already been the subject of a contract between the city and the bus company. The city in this case could have contracted with the respondent that any local tax would be deducted from the amount due under the contract. This in effect is what the parties did contract. For the privilege to operate its buses the contract, as detailed above, requires the company to pay five per cent of its gross receipts, and the bus company agrees not to apply to the public authorities for any increase over a five-cent fare. This is a limitation upon the company. What limitation is there upon the city to prevent it from jumping the contract with a change of administration, for the contract ran for ten years? The contract provided that if the city exacted any more money for this franchise or for the right to do business under the franchise, the amount should be deducted from the contract price to be paid for the privilege. If this were not so what was the use of making any contract with the city? The wording of the contract has enabled the city to draw a distinction between an ordinance and a local law which, in our judgment, vitiates the very purpose of the contract and is contrary not only to the intention of the parties but one which would render the entire contract nugatory. Courts are not inclined to turn a bilateral contract into one binding upon one party only.

This contract was made in 1931, long before the Legislature had passed a law — an emergency law — permitting the city in 1934 to exercise the general power of

local taxation. When the parties made this contract in 1931 the city had no power through its Board of Aldermen and Board of Estimate, called its Municipal Assembly, to pass such a local tax law as we are here considering. This local law is known as No. 10. The parties, therefore, were contracting according to the terminology and the powers existing at the time. The contract stated: " Provided, however, that any new form of tax or additional charge that may be imposed by any ordinance of the City or resolution of the Board upon or in respect of the franchise hereby granted or the exercise thereof, resulting in an increase in the cost of operation and paid by the Company, shall be deducted from the compensation payable to the City hereunder for the current fiscal year."

That the local law provided a new form of tax or additional charge upon or in respect to the franchise hereby granted is beyond dispute. The city claims, however, that this additional draft upon the gross income for exercising the franchise was not imposed by an ordinance of the city or a resolution of the Board of Estimate, but by local law and, therefore, did not come within this exception or provision. However, no mention apparently is made of the fact that even in 1931, when this contract was drawn, no ordinance, as defined now by the city, could have imposed any additional tax or charge on the bus franchise. The Board of Aldermen, given power in certain instances to pass ordinances under the charter, were restricted by section 50 of the charter (as amd. L. 1916, ch. 592), in the following words: " But no ordinance hereafter adopted or power hereafter exercised by the board of aldermen shall limit, apply to or affect any franchise, grant, contract or resolution in the nature of a franchise hereafter made, approved or authorized by the board of estimate and apportionment as in this act provided, or by the board of rapid transit railroad commissioners of the city of New York."

The use of the word " ordinance," therefore, in this contract in 1931, intended to express more than the ordinary use of the term, as the Board of Aldermen could in no way affect by its own action or by a so-called ordinance the contract made by the Board of Estimate with this bus line. The words " ordinance of the city " and the phrase " resolution of the board " were intended to refer to and cover any act by the city authorities increasing for city purposes or for the city treasury the five per cent upon the gross receipts, the compensation for the franchise. Any other interpretation made the contract meaningless and of little or no protection for the bus company.

One form of tax was not exempted. Taxes required to be paid by any law of the State of New York were in addition to payments under the contract. The city could not, and did not attempt to control the taxing power of the State. Any tax which was levied and required to be paid by the State Legislature the company had to pay, irrespective of a city contract. This would seem to be self-evident without such reservation in the contract. In other words, these provisions under section 12, said this to the bus company: " For your franchise you pay us five per cent on the gross receipts and we will charge you no more for the period of ten years, but as to State taxes imposed by the Legislature, we have no control over these, so they are not included within any terms of this contract." The State Legislature did not impose this tax upon the gross receipts of the bus company nor did it require the city to do it. The city was free to do it or not, as it pleased. The local law was its own concern, and it seeks to turn it into a power virtually to break its contract made in 1931.

The language cannot be twisted to accomplish this purpose, and the judgments of the courts below should be affirmed.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur.

Judgment affirmed.