EIGHTH AVENUE COACH CORPORATION, Respondent, *v.*
CITY OF NEW YORK et al., Appellants.

Argued June 2, 1941; decided July 29, 1941.

*William C. Chanler,* Corporation Counsel (*Paxton Blair, Herman Horowitz* and *Leo Brown* of counsel), for appellants. The express provisions of the franchise amount to a consent in advance to the one-way regulation. (*Dartmouth College* v. *Woodward,* 4 Wheat. 518; *Brooklyn Heights R. R. Co.* v. *Steers,* 213 N. Y. 76; *Western Union Tel. Co.* v. *Syracuse Electric Light & Power Co.,* 178 N. Y. 325; *New York Rapid Transit Corp.* v. *City of New York,* 275 N. Y. 258; 303 U. S. 573; *State ex rel. City of Minneapolis* v. *St. Paul, M. & M. Ry. Co.,* 98 Minn. 380; 214 U. S. 497; *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 420.) Apart from consent, the regulation, being a reasonable exercise of the

police power, overrides the franchise. (*Commissioners of Palisades Interstate Park* v. *Lent*, 240 N. Y. 1; *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Manigault* v. *Springs*, 199 U. S. 473; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398; *New York & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556; *Boston & Maine R. R. Co.* v. *County Commissioners*, 79 Me. 386; *Cincinnati, Indianapolis & W. Ry. Co.* v. *Connersville*, 218 U. S. 336; *Denver & Rio Grande R. R. Co.* v. *Denver*, 250 U. S. 241; *Baltimore* v. *Baltimore Trust & Guarantee Co.*, 166 U. S. 673; *New Orleans Gas Light Co.* v. *Drainage Comm.*, 197 U. S. 453; *Jones Beach Boulevard Estate, Inc.*, v. *Moses*, 268 N. Y. 362; *French* v. *Carhart*, 1 N. Y. 96.)

*Boykin C. Wright* and *James A. Fowler, Jr.*, for respondent. The police regulation would have drastically curtailed the revenues and profits of the coach corporation, and taken away a major portion of its franchise rights. (*Griswold* v. *N. Y. C. & H. R. R. R. Co.*, 115 N. Y. 61; *Tortora* v. *State of New York*, 269 N. Y. 167; *Public Service Com.* v. *N. Y. C. R. R. Co.*, 230 N. Y. 149.) The franchise rights of the coach corporation were entitled to the protection of the State and Federal Constitutions, and the city could not destroy or curtail such rights without compensation. (*People* v. *O'Brien*, 111 N. Y. 1; *Brooklyn Bus Corp.* v. *City of New York*, 274 N. Y. 140; *Los Angeles* v. *Los Angeles Gas & Electric Corp.*, 251 U. S. 32; *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393; *Coney Island, F. H. & B. R. R. Co.* v. *Kennedy*, 15 App. Div. 588; *Langdon* v. *Mayor*, 93 N. Y. 129; *Knickerbocker Ice Co.* v. *42nd St. R. R. Co.*, 176 N. Y. 408; *Matter of Mayor of New York*, 193 N. Y. 503; *First Construction Co.* v. *State*, 221 N. Y. 295; *Appleby* v. *City of New York*, 271 U. S. 364; *Grand Trunk Western Ry. Co.* v. *City of South Bend*, 227 U. S. 544; *Delaware, L. & W. R. R. Co.* v. *Town of Morristown*, 276 U. S. 182.) The primary purpose of the franchise contract was to establish two longitudinal routes each operated in both directions, and specific clauses in the contract cannot be isolated and interpreted as giving the Police Com-

missioner the power to destroy or curtail the franchise routes. (*Brooklyn Bus Corp.* v. *City of New York,* 274 N. Y. 140; *People* v. *Detroit United Railway,* 156 Mich. 659; *Atwater & Co.* v. *Panama R. R. Co.,* 246 N. Y. 519; *Becker* v. *Frasse & Co.,* 255 N. Y. 10; *People ex rel. Woodhaven Gas Light Co.* v. *Deehan,* 153 N. Y. 528; *Langdon* v. *Mayor,* 93 N. Y. 129; *People ex rel. City of New York* v. *Nixon,* 229 N. Y. 356; *City of Troy* v. *United Traction Co.,* 202 N. Y. 333.)

FINCH, J. The single question presented for decision is whether the Police Commissioner of the city of New York, by means of a traffic regulation providing for one-way traffic on a portion of Eighth and Ninth avenues, may abrogate and cancel a substantial part of two out of the four omnibus routes granted under a ten-year franchise following competitive bidding upon payment of a cash consideration of $475,000 and three per cent of the gross receipts.

After a trial at Special Term, a decree was entered enjoining the Police Commissioner of the city of New York from enforcing one way traffic regulations permitting only south-bound traffic, which includes the omnibus line operated by plaintiff on Eighth avenue from Fifty-seventh street to Bethune street, and only north-bound traffic on Ninth and Columbus avenues from Fourteenth street to Sixty-fourth street.

The franchise of plaintiff provides for a route on Eighth avenue starting with the Cortlandt Street Ferry and running along Hudson street, West Broadway, Eighth avenue, Central Park West, to the Polo Grounds. A second route, independent of the first and intersecting it at no point, runs along Ninth and Amsterdam avenues, starting at Gansevoort street and running along Ninth avenue, Columbus avenue, Broadway, Amsterdam avenue to LaSalle street near One Hundred Twenty-fifth street.

Following an announcement in the newspapers, the Police Commissioner sent to the Coach Corporation a letter to the effect that the existing two-way operation on each of these

avenues for the distances above-noted must be discontinued and in place thereof a one-way loop operation would be substituted in the affected area together with operation over three connecting cross-town links. Plaintiff had no franchise over these cross-town streets from the Board of Estimate, nor a certificate of convenience and necessity from the State Transit Commission. Ten days later the Commissioner published a notice simply designating part of these two avenues as one-way streets, and containing nothing concerning cross-town connecting links.

Special Term placed its decision upon two grounds, *first*, that no express provisions nor anything in the franchise contract amounted to a consent in advance to the one-way traffic regulation now assailed by plaintiff, and *second*, that apart from consent, the traffic regulation, though an alleged reasonable exercise of the police power, could not abrogate and cancel without compensation a substantial portion of the valuable property rights owned by plaintiff under the franchise.

Plaintiff urged also that this regulation invaded the exclusive jurisdiction of the Board of Estimate and the Transit Commission. Special Term, however, expressly refrained, as do we, because it is unnecessary in view of our decision, from passing upon this issue.

The Appellate Division affirmed the decree of Special Term, without opinion.

We take up first the contention of the city that we should consider certain clauses of the franchise contract as creating reservations which permit a mere police regulation to abrogate and cancel a large part of two of the four routes over a substantial portion of the franchise route contract.

In answer to this contention we need only cite the fundamental canon of construction, that the franchise contract must be read as a whole in order to determine its purpose and intent, and that single clauses cannot be construed by taking them out of their context and giving them an interpretation apart from the contract of which they are a part. (*Atwater & Co.* v. *Panama R. R. Co.*, 246 N. Y. 519;

*Becker* v. *Frasse & Co.*, 255 N. Y. 10.) Words considered in isolation may have many and diverse meanings. In a written document the word obtains its meaning from the sentence, the sentence from the paragraph, and the latter from the whole document, all based upon the situation and circumstances existing at its creation. A consideration of this franchise contract shows that its primary purpose was to establish two separate longitudinal omnibus routes, each operating in both directions. The contract describes in specific detail these two routes which do not connect or touch at any point throughout their length, and no cross-town or connecting links were provided between the two routes. It is conceded that a two-way operation over these longitudinal thoroughfares was intended by both parties to the contract. This view of the contract is confirmed by the situation and circumstances existing at the time of the execution of the franchise contract. Following a fifty year two-way operation of street cars on Eighth and Ninth avenues, the street car company became hopelessly insolvent and the Federal receiver surrendered the franchise to the city. Thereupon the Board of Estimate called for competitive bids for two omnibus routes on each avenue to take the place of the street car routes. The routes have been described above. The Eighth avenue route as increased by a modification of the franchise comprises 9.8 miles in length, and the Ninth avenue route, six miles. The total of the two routes was 15.6, all of which was to be a two-way operation save at either end where provision was made to run around the block in order to obviate the necessity of " U " turns in the avenues. The proposed traffic regulation would reduce the fifteen miles of two-way operation by eliminating five miles out of a total of 31.6 miles in the best paying portion and substituting therefor one-way operation. The Board of Estimate fixed the money payment to be made on the basis of a two-way operation. By unanimous vote the Board of Estimate decided to award the franchise to plaintiff after determining that its offer to pay $475,000 in cash, $30,000

deposited as security under the twenty-fourth paragraph of section 2 of the franchise contract, and three per cent of the gross annual revenue was the most advantageous to the city. A brief outline of the steps necessary in the award of a franchise may not be amiss, as showing the elaborate proceedings which even the Board of Estimate and the State Transit Commission, which are endowed with the franchise making power, must scrupulously observe whenever a franchise is to be granted or modified in the slightest degree. First, there is a written petition from the successful bidder and a public hearing thereon held after ten days from a published notice of hearing containing the petition in full. The Board of Estimate then must make an investigation into the money value of the franchise and the adequacy of the compensation offered and embody the results of such investigation and inquiry in a written contract containing all the terms and conditions. The proposed contract with the form of resolution to adopt the same must then be entered on the minutes of the Board of Estimate. Thereupon the proposed contract and proposed resolution must be published in full for at least fifteen days together with a notice of the second public hearing which must be held not later than twenty-seven days after the entry of the form of contract on the minutes. The resolution awarding the contract must be voted by at least a three-fourths vote. There must be then added the separate and additional approval of the Mayor. After the award of the franchise contract, the successful bidder must apply to the Transit Commission for its approval and authorization. Again a public hearing must be held upon due notice. Any modification of a franchise contract requires the same procedure. Thereupon plaintiff paid to the city in cash the sum of $475,000, deposited the $30,000 additional security, purchased buses and other operating equipment at an approximate cost of $1,000,000, and hired and trained employees for the operation. Operation commenced November 12, 1935, and has continued ever since in both directions throughout the entire length of each of

the routes. The operation has proved successful; for example the annual net income for 1938 was upwards of $350,000, so that the three per cent of the gross revenue paid to the city has been substantial. As noted, the franchise of plaintiff expires by its terms in 1945, or a period of a little over four years yet to run.

Keeping in mind the situation and circumstances existing at the time of the awarding of this franchise, that the two-way operation over these longitudinal thoroughfares was intended by both parties to the contract for the benefit of the public as well as for plaintiff, and that the value of the franchise was fixed and paid for on that basis, we examine the clauses upon which defendants rely as containing alleged express reservations so that a mere traffic regulation, issued by the Police Commissioner, not a party to the contract, may cancel a substantial part of two of the four routes. The first of these clauses appears in section 1, containing the grant of the franchise. Following the enumeration of the streets and avenues to be traversed, there appears the clause that plaintiff " shall have the right to cross such other streets and avenues, named and unnamed, as may be encountered in traversing said routes, with the right to operate omnibuses in either direction over any street and avenue described in the foregoing routes, *except that said operation shall at no time be in a direction contrary to police regulations.*" Subdivision seventeenth of section 2 provides: " The Company shall be subject to all laws and ordinances affecting or which may be applicable to the operation of omnibuses *and all traffic regulations applicable thereto now in force or which may be in force during the term of this contract.* The Company shall also comply with and enforce the carrying out of any lawful orders or regulations designed for the protection and safety of persons or property or for the comfort, health and convenience of the public, which may be issued by the Board or official having jurisdiction over such matters, *and the Company shall also comply with and enforce the carrying out of such specific orders or directions with respect to the operation of omnibuses*

*hereunder as may be issued by the Police Department of the City and which are designed to govern the movements of omnibuses in the streets."* Subdivision twentieth of the same section provides: " The Company shall operate, pursuant to this contract, the routes as herein described or any portion of the same which shall best serve the convenience of the public, but the Company shall operate only upon the streets and avenues herein described. If vehicular traffic be diverted from any of the streets or avenues forming a part of such routes because of fires, parades, traffic congestion or any other event closing any such streets or avenues temporarily or permanently to vehicular traffic, the Company may, during such closing, use such other streets or avenues as are necessary, or as may be specified by the Police Department or by the Board, to continue the operation of such routes. If, however, any such streets or avenues shall be closed to vehicular traffic, for a period longer than forty-eight (48) hours, or traffic regulations shall require a continued diversion of all or part of the operation, then the Company shall communicate with the Board and the Board may by resolution authorize the use of such other streets or avenues for the remaining period during which such streets or avenues may be closed or may designate an agent who may on certificate authorize the use of such other street or streets. * * * "

Another provision relied upon by defendant is contained in subdivision 32, in which the company contracts to abide by and perform all the terms of the contract and not to set up any claim that the provisions reserving to the city the right to terminate the franchise or any other provisions are unreasonable or void.

It appears in the record that the above clauses were standard clauses used by the city in other franchise contracts and were stock provisions not drafted with any special reference to the two longitudinal routes in the case at bar, and their inclusion in this franchise agreement would seem to have no special significance or importance beyond that of their ordinary meaning arising from the context in which they are used.

We take up first the clause in section 1, namely, that the company shall have the right to cross such other streets and avenues as may be encountered in traversing the two longitudinal routes, with the right to operate buses in either direction except that such operation shall at no time be in a direction contrary to police regulation. This provision follows the detailed description of the streets and avenues comprising the routes and the particular clause in question and the clause, " except that said operation shall at no time be in a direction contrary to police regulations," is made a part of the sentence which specifically provides for two-way operation. This clause is naturally construed in harmony with its context when it is noted that there are ten or more places along these routes where the use of cross streets is required, and also at the terminals, to prevent " U " turns. To permit buses to be operated in either direction over these cross streets would disorganize traffic. Obviously the above-quoted clause was inserted to cover just such situations in the contract. To construe it in such a way as to make it nullify the rest of the sentence in which it appears, so that while one part of the sentence provides for two-way traffic the rest of the sentence would permit a traffic regulation of the Police Department to abolish altogether instead of regulating two-way traffic for a substantial portion of the routes, places a construction upon this portion of the sentence which appears unreasonable in the light of its setting, exceeds the bounds of regulation, and destroys a valuable portion of the franchise rights without just compensation.

The second clause, subdivision 17 of section 2, which requires that plaintiff obey all laws, ordinances and traffic regulations applicable to omnibus operation in force during the term of the franchise, to obey lawful orders for the comfort, health and safety of the public, and to comply with specific orders issued by the Police Department with respect to the operation of buses and designed to govern their movements in the street, obviously is the standard clause applicable to all such contracts, which provides in general terms that the operation shall not be illegal but shall con-

form to all lawful requirements. It relates only to the regulation of the movement of the buses while being so operated. Traffic regulations may include many things such as speed of operation, bus stops, rules of the road, safety zones, traffic lights, rights of way, and other regulations. Such right to regulate, however, did not reserve the right to destroy the most profitable portion of the route. When regulation becomes destruction, it ceases to be regulation. In *Grand Trunk Western Ry. Co. v. City of South Bend* (227 U. S. 544) the city, after granting a double track franchise, attempted to repeal the franchise as to one track, and the ordinance attempting such repeal was held invalid even though the second track had not yet been laid (227 U. S. 544). To the same effect see *Delaware, Lackawanna & Western R. R. Co. v. Town of Morristown* (276 U. S. 182), *Pennsylvania Coal Co. v. Mahon* (260 U. S. 393).

Both the clauses thus far considered, when read in harmony with the contract, do not presuppose curtailment but continued operation and concern the right to regulate the movement of the buses while being operated pursuant to the franchise. In the third clause, namely, subdivision 20 of section 2, which refers to the curtailment of operation because of events beyond the will of either contracting party, provision is made for substitutional operation so that as a result, instead of providing for curtailment, this clause makes provision for continued operation. Moreover, the franchise contract itself provides in subdivision 5 of section 2 that plaintiff is obligated under penalty of forfeiture of all of its rights to place and keep in full operation all of the authorized routes, obviously for the benefit of the traveling public. This subdivision 20 contains no reference to one-way traffic regulation and hence may be discarded upon that ground alone. The clause primarily relates to fires, parades and other events outside of the control of the contracting parties. The city urges that the use of the words, " closing any such streets or avenues temporarily or permanently to vehicular traffic " means a permanent shifting of the franchise for all time. A reading

of the entire clause shows, however, that the use of the word " permanently " was apparently to denote a period other than a permanent shifting of the franchise route. This meaning is emphasized by the provision that the right to use the substitutional streets is only to be granted by resolution of the Board of Estimate " for the remaining period during which such streets or avenues may be closed or [the Board of Estimate] may designate an agent who may on certificate authorize the use of such other street or streets." Obviously this remaining period must be occupancy short of a permanent franchise, since the permanent operation of buses over non-franchise streets could not be lawfully authorized by any mere resolution of the Board of Estimate or by any authorization of an agent. Nothing would suffice except the full procedure of written petition, publications, public hearings, inquiry and franchise award by the Board of Estimate, and the issuance of a certificate of convenience and necessity after similar procedure by the State Transit Commission, all in accordance with the detailed requirements of the charter of the city and the laws of the State. Otherwise, the effect of this subdivision would be to create something in the nature of a floating franchise where apparently the route could be relocated under the guise of police regulation at the will of the Police Commissioner. Such a construction would not be in harmony with the franchise contract as a whole but in contradiction therewith.

No contention is being made here by plaintiff that any terms of the contract, if properly construed, are either unreasonable or void.

Construing this franchise contract as a whole in the light of the conceded intention of the parties, providing for a two-way operation, the clauses relied upon by the city clearly were not intended to permit a mere police regulation providing for one-way operation to cancel and abrogate for a substantial distance two of the four routes.

As bearing upon what has been said above and what follows, we have already indicated that there is in the record substantial evidence in support of the finding by the trial

court unanimously affirmed by the Appellate Division, that this one-way operation will result in material reduction to plaintiff, both in passengers and profits. In the case at bar we are not confronted with a situation where the regulation in question "did not materially modify or impair the rights granted by the contract." (*Baltimore* v. *Baltimore Trust & Guarantee Co.*, 166 U. S. 673, 681.)

We turn now to the second issue involved herein, namely, whether apart from alleged reservations in the franchise contract, the police traffic regulation may be sustained as a reasonable exercise of the police power. In that connection it has long been settled authoritatively in this State that a franchise constitutes property within the ordinary significance of the word. (*People* v. *O'Brien*, 111 N. Y. 1, 40.) The grant of a bus franchise constitutes a grant of property. (*Brooklyn Bus Corp.* v. *City of New York*, 274 N. Y. 140.) A franchise, like other forms of property, is protected both by the State and Federal Constitutions against a substantial curtailment or destruction by the government without payment of fair compensation. (*City of Los Angeles* v. *Los Angeles Gas & Elec. Corp.*, 251 U. S. 32, 39.) Where, as here, the damage is substantial, the city may, of course, exercise condemnation, but not without the payment of just compensation. (*Langdon* v. *Mayor*, 93 N. Y. 129; *Delaware, L. & W. R. R. Co.* v. *Town of Morristown*, 276 U. S. 182; *Pennsylvania Coal Co.* v. *Mahon*, 260 U. S. 393.) Plaintiff is demanding only that proper recognition be given to the franchise which it purchased and paid for. There is always open to the city the power to negotiate with the plaintiff as to fair terms for curtailing the bus routes, and should plaintiff seek too much, the city has the right to condemn the franchise in whole or in part, with the right to have just compensation for the taking fixed by the courts.

It follows that the judgment should be affirmed, with costs.

LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., taking no part.

Judgment affirmed.