Alexander Del Gtorno, J.
This is a claim by the New Rochelle Water Company, a private water company, for the appropriation of certain private easements, franchises, water mains, hydrants, branch lines, valves, blow-offs and appurtenances by the People of the State of New York, for the purpose of construction of the New York-New England section of the Thruway, all located in the City of New Rochelle and in the Villages of Ardsley and Pelham Manor, Westchester County.
*808 The claimant was incorporated as a water works company in the year 1885, and by a certificate of extension of existence its duration was made perpetual. Either by privately acquired easements, lease or franchise, the claimant has instituted a water supply system in the above-mentioned communities which furnished water to homes and other buildings and to fire hydrants and all other facilities using water thereat. It was a monopoly within its prescribed limits. The main pipes were laid about 4 feet below the surface' of the streets involved and, in many cases, such operation required rock drilling and excavation. The takings for Thruway purposes were piecemeal from January 4,1954 to March 15,1957.
I shall concern myself first with the second claim, which involves a contract for relocation of pipes and appurtenances, entered into between the State and the claimant. The State and claimant entered into the aforesaid contract on May 7, 1952, whereby the State agreed to pay the claimant the sum of $9,297.46 in connection with the cost of relocating and installing pipes in the Boston Post Road detour. The claimant was to do the work. This contract was approved by the State “ subject to credits of proper deduction based on accrued depreciation of facilities replaced”. (Attorney-General’s Opinion, Aug. 8, 1951; 1951 Atty. Gen. 139.) A supplemental agreement of February 10, 1953 increased the contract price to $10,091.44 and a second supplemental agreement increased the contract price to $15,309.20. This last agreement was accompanied by a letter from Mr. J. S. Bixby, District Engineer, specifying that the total amount was arrived at as follows:
Cost of relocation.................$10,952.82
. Bill for facilities not replaced...... 4,356.38
Total........................$15,309.20
In this letter, Mr. Bixby explained that on three occasions he had tried to get an official decision on the “ sacrificed life ” bill (the $4,356.38) and that the only way to force a decision was to include it in the agreement enclosed.
On November 29, 1955, Mr. Bixby wrote to claimant, stating that the Director of Contracts and Accounts had advised him that “ The Thruway Authority will not accept for payment invoices containing charges for ‘ sacrificed life ’ ’ ’. This latter contention was in conformity with the aforesaid opinion of the Attorney-General which advised payment only for pipes and appurtenances relocated. This opinion, incidentally, was never *809 brought to the attention of the court, which upon its own initiative has referred to it.
At the trial, the State offered no defense, relying only upon cross-examination. The Attorney-General conceded that the cross-examination was solely for the purpose of showing that the State had built three stretches of new pipe line to maintain the continuity of the water supply to the recipients not affected by the taking, and that the new lines were not to be considered as part of this claim.
Therefore, the court considers the claim of $4,356.38 for facilities not replaced by the State, and for which payment was refused on the above-mentioned second supplemental agreement, in the same category as the items set forth in claim number one, and all references to claim number one shall apply equally to the demand for this item in claim number two.
Concededly the State cut through the various streets mentioned in the claim and destroyed or removed a number of houses in the construction of the Thruway. According to claimant, the contractors’ bulldozers removed and destroyed the pipe lines, service branches and hydrants so that to claimant they had nothing but junk value, and for that reason it did not reclaim any. It was conceded by the claimant, however, that the pipes removed and destroyed, had they been left abandoned, would have remained in those streets to service no one, the hydrants to protect no one, and that the branch lines would be of no value since the houses they served were either removed or destroyed. The testimony is, in substance, that these facilities were removed and destroyed at various times as the streets were torn up to make way for the Thruway.
Whether laid down by right of easements, lease or franchise, these pipes were an important property interest in favor of claimant. These were part of its assets which formed the basic value of the franchise, which was lessened by the value of the parts removed. The rights of claimant under its franchise were property rights. (Ghee v. Northern Union Gas Co., 158 N. Y. 510, 513; Louisville v. Cumberland Tel. Co., 224 U. S. 649, 661; New York Elec. Lines v. Empire City Subway Co., 235 U. S. 179, 192.) Such franchise rights constitute property protected by the guarantees of the Federal Constitution (14th Arndt.) and the New York State Constitution (art. I, § 7). Upon this point there are numerous authorities, i.e., Los Angeles v. Los Angeles Gas Corp. (251 U. S. 32, 39); Eighth Ave. Coach Corp. v. City of New York (286 N. Y. 84, 96), and New York Tel. Co. v. State of New York (169 App. Div. 310, affd. 218 N. Y. 738).
*810 The State had the right to appropriate for the Thruway those parts of the streets involved which it did take, while it was duty bound to make the claimant’s franchise work where it had customers to serve; otherwise it would have destroyed or impaired the very right it had granted to the claimant. The State did that. It saw to it that the remaining customers were not deprived of water for domestic consumption or fire protection.
■The claimant’s franchise rights, however, were subject to the paramount right of the State to construct the Thruway; and the claimant, by implication, accepted such curtailment of its franchise rights as it suffered here, so long as its franchise remained intact as to the remaining customers. Thus, to insure the continuing operation of the water supply system, the State built the aforesaid three new sections at its own expense.
One of the conditions of a franchise is the continuation of the service, for the franchise expires if the service is discontinued. In the absence of any recognized ground for termination by one party or for forfeiture, neither party may modify or abrogate a franchise in whole or in part without the consent of the other party while the franchise is operative and effective (37 C. J. S., Franchises, § 26, subd. b, par. [1]). Therefore, in every way, except for the loss of customers, the claimant’s franchise remained intact. For this loss it is not entitled to any compensation. (Mitchell v. United States, 267 U. S. 341; Coffey v. State of New York, 291 N. Y. 494; Beck Properties v. State of New York, 184 Misc. 148; New York Tel. Co. v. State of New York, supra.) As a matter of fact, although set forth in the claim, no adequate proof of the value of these elements was introduced at the trial, and in its memorandum of law claimant makes no claim for the extinguishment of easements, leases or franchises.
The claimant had installed water mains, branch lines, hydrants and appurtenances along the streets taken by the State. It had incurred substantial expense. Its witnesses furnished the information as to when these were installed and the present reproduction costs less depreciation thereof. The witness, Will Calder, who has been a certified public accountant for 43 years, who has an impressive record of accomplishments in that field, and who has specialized in auditing costs and expenses as well as in setting up systems of accounting procedures for water companies in many sections of our country, and who has audited the books of the claimant since 1928, testified that he had made a chart of reproduction costs less depreciation of pipe lines, service branch lines, hydrants, based on a life expectancy of *811 those items at 125 years from the date the facility was installed. This chart, including the theory of evaluations, was not contradicted either by cross-examination or by direct testimony, except for certain stipulated changes made in the various totals, which the court made on the exhibit by consent of the parties.
The State rested on claimant’s case and moved for dismissal of the claim on the grounds that no liability was shown and no damages proven and that if any damage was proven it was nominal. Decision was reserved by the court.
Before the State destroyed these facilities, they were carried on the books of claimant as assets having certain values. To procure a mortgage, the claimant would have included these facilities as part of its assets; to present before the Public Service Commission its petition for rate consideration these facilities would be set up as part of its capital investment. These were a property right constituted by the franchise and could not be violated by the grantor of the franchise. (Western Union Tel. Co. v. City of Syracuse, 24 Misc. 338.)
The State saw fit to destroy this portion of claimant’s assets, and it cannot now claim, as it has in its memorandum of law, that the claimant, enjoying the continuity of water service for its remaining customers through the act of the State in having installed three new main line connections for that purpose, has suffered no damage and that, if it did suffer damage, it was nominal. Having done all this, the State may not be absolved from liability for the pipes and appurtenances removed by its own operation. Judge Cardozo, in Jackson v. State of New York (213 N. Y. 34, 35), clearly established the rights and obligations of the parties when he said: “ Condemnation is an enforced sale, and the State stands towards the owner as buyer toward seller. On that basis the rights and duties of each must be determined.”
The court is of the opinion that the damage suffered by reason of the appropriation and destruction was substantial and real, and that claimant must be compensated therefor. (New York Tel. Co. v. State of New York, supra, Eighth Ave. Coach Corp. v. City of New York, 286 N. Y. 84, supra, Rochester & Lake Ontario Water Co. v. City of Rochester, 176 N. Y. 36.) The New York Tel. Co. case (169 App. Div. 310, affd. 218 N. Y. 738, supra) involved a claim for damages sustained by the destruction of a portion of its telephone line in connection with the appropriation of lands for the Barge Canal. The court held that the acts of the State amounted to an appropriation of claimant’s easements and physical structure, followed by the destruction of claimant’s line, and was not a mere regulation *812 of claimant’s franchise by requiring a relocation of its line, and a taking merely of its right to use the highway. The court stated (pp. 317-318): “ The claimant having accepted the franchise, and in reliance upon it having acquired easements and erected and entered upon the operation of its telephone system, a contract was thereby constituted between the State and the claimant, and the franchise, easements and physical structures became property of which the claimant could not be deprived even by the sovereign authority without liability upon the part of the State to make just conmensation therefor * # *. It must be held, therefore, that the appropriation by the State was not merely of claimant’s franchise rights within the flow line of the reservoir, leaving its structural property practically valueless, but of all its property within such limits, corporeal and incorporeal, constituting an indissoluble combination of property, and that the claimant is entitled to be awarded just compensation therefor.”
The question before the court, however, is whether the value of the pipes, fittings and appurtenances is to be determined on the basis of their physical condition at the time of their removal by the State from the beds of the streets, or on the basis of revenue earnings at the time of the taking when they were being-used to furnish water to customers who were also eliminated by the taking. It seems to me that inasmuch as the court has determined that claimant may not be compensated for damage to its franchise which had been made whole by the State so far as the remaining customers are concerned, the value which may be ascribed to these pipes, fittings and appurtenances removed by the State can be based only upon the original cost to the claimant less depreciation thereof, much in the manner of the purchase and sale of a second-hand automobile.
The record indicates that the court sought unsuccessfully to have evidence introduced by claimant as to the cost of the original investment; the Attorney-General, who contends that the loss to claimant is nominal, failed to introduce any such evidence or any other evidence of valuations.
While the court agrees that the loss would have been nominal if the pipes, fittings or appurtenances had been left abandoned, nevertheless the State did remove them, and such act constituted a taking.
Computing the claimed damages on the basis of cost of reproduction less depreciation, the undisputed amount due to the claimant would be $29,266.74. The court, however, is mindful of the fact that the witnesses for the claimant themselves testified that had these pipes, fittings and appurtenances remained *813 in the streets where they had been laid, they would have remained there to serve no one, and, therefore, the court finds that they have no reproduction value but only a depreciation value based upon the original investment. An award to the claimant in the sum it claims would be inequitable and unfair to the State. In the absence of proof of the original investment made by the claimant, the court fixes the damages to the claimant in the sum of $12,500, including the aforesaid $4,356.38 remaining unpaid on the first claim, with interest thereon from January 4, 1954, that being the first of various takings by the State.
In the event that claimant considers such award to be inadequate in that it does not represent the amount of the original investment less depreciation, it may request and will be granted a reopening of the trial, at which time it may submit further evidence as to the amount of such original investment. In like manner, should the State desire to submit evidence in this regard, it may request and will be granted a reopening of the trial.
All motions heretofore made by the State on which decision was reserved are hereby denied.
The court has passed upon all findings of fact and conclusions of law.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.