# CITY OF LOS ANGELES ET AL. *v.* LOS ANGELES GAS & ELECTRIC CORPORATION.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 50.    Argued October 23, 1919.—Decided December 8, 1919.

A distinction is to be drawn between the powers of a city when acting in its governmental capacity, i. e., the police powers,—and those which belong to it in its proprietary or quasi-private capacity. P. 38.

Merely for the sake of establishing a lighting system of its own, a city has no right to displace or remove without compensation the fixtures of a lighting company already occupying the streets in virtue of rights guaranteed by its franchise. P. 37.

Declarations in an ordinance to the effect that speedy establishment of a municipal lighting system, and therein the removal or relocation of poles and other fixtures maintained in the streets by the owners of other lighting systems, are necessary for the public peace, health

and safety, do not suffice to convert such acts of interference into a legitimate exercise of police power. Pp. 34, 38.

A franchise to use the streets for supplying a city and its inhabitants with electric light, acquired under the California Constitution, Art. XI, § 19, before the amendment of 1911, conveys contract rights which the city is not at liberty to destroy, and the property employed in their exercise can not be taken by the city without due process of law—the payment of compensation. P. 39. *Russell* v. *Sebastian,* 233 U. S. 195.

241 Fed. Rep. 912, affirmed.

THE case is stated in the opinion.

*Mr. W. B. Mathews,* with whom *Mr. Albert Lee Stephens* and *Mr. Charles S. Burnell* were on the briefs, for appellants.

*Mr. Paul Overton,* with whom *Mr. Herbert J. Goudge* was on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

The appellant city is a municipal corporation of the State of California and the other appellants are its officers, having official relation to it and its rights and powers.

The appellee is a California corporation invested with and in exercise of a franchise for generating and selling electricity through a system of poles and wires and other works in the public streets of Los Angeles, among others in that known as York Boulevard.

The appellee—to which we shall refer as the corporation—brought this suit in the District Court to declare invalid and restrain the execution of an ordinance of the city providing for a municipal electric street-lighting system and making way for it in such way, it is charged, that it obstructed, trespassed upon and made dangerous

the system of the corporation in violation of its rights under the Constitution of the United States.

The District Court granted the prayer of the bill upon the grounds relied on and hence the appeal from its decision direct to this court.

The ordinance attacked is very long by reason of its repetitions. It, however, can be intelligibly reduced to a few provisions. It was passed March 6, 1917, and approved the next day, and declares in its title its purpose to be to provide for the removal and relocation of poles and other property in the public streets of the city "when necessary in order that the municipal electrical street lighting system may be constructed, operated and maintained." Such system and its installation "as speedily as may be practicable" is declared necessary for "the public peace, health and safety."

It is recited that certain "fixtures, appliances and structures" (they are enumerated) are maintained in the streets and it is necessary "in order that sufficient space may be secured for said municipal electrical system . . . and that the work of constructing and establishing the same may be carried on, to provide for the removal or relocation of certain of said poles and other properties so maintained by said persons and corporations."

It is therefore ordained that (§ 1) whenever it shall appear to the Board of Public Works that the removal or relocation of such "fixtures, appliances or structures" (there is an enumeration again which we omit as useless repetition) is necessary in order that the municipal system may have place, the Board shall give notice to the person, firm or corporation owning or controlling the property to remove or relocate the same, the notice to designate the property to be removed and the place to which it shall be removed, and it shall be the duty of such person, firm or corporation to comply with the notice within five days of its receipt. To fail or refuse to so

comply or to diligently prosecute the work of removal is made unlawful (§§ 2 and 3) and (§ 4) made a misdemeanor punishable by a fine of not more than $500 or by imprisonment in the city jail for a period of not more than six months, or by both such fine and imprisonment. Each day's delay is made a separate offense.

In case of failure to remove or prosecute the work of removal the Board of Public Works is given power to do what the notice directs. (§ 5.)

By § 6 the dependency of the city upon private contracts for lighting the public streets and other public places is declared, some of which contracts, it is said, have expired and all will have expired by July, 1917, thus making the completion of the municipal system necessary to provide for lighting the streets without interruption and the removal or relocation of the appliances owned or controlled by various persons, firms or corporations immediately necessary in order that the city may complete and install its system. And it is declared that the "ordinance is urgently required for the immediate preservation of the public peace, health and safety."

The ordinance was preceded by acts of interference by the city with the property of the corporation in other streets and also in York Boulevard, which interference was enjoined by interlocutory and final decree by the Superior Court of Los Angeles County in a suit brought by the corporation—the city not defending. And it was interference, not displacement, and the court's decree was adapted to the extent of the interference. The decree as to other streets than York Boulevard was as follows: ". . . from in any manner trespassing upon, interfering with, moving or displacing the poles or wires, or either or any of them, owned or controlled wholly or in part by plaintiff [the corporation in this case]; or erecting or placing any pole, cross-arm or other electrical appliance or equipment or attaching any wire or cable to or upon

any pole, cross-arm or other electrical appliance or equipment in a fixed position within the distance from any pole, cross-arm, wire or other electrical appliance or equipment owned or controlled wholly or in part by plaintiff, [the corporation in this case], as prescribed by the laws of the State of California and the rules and regulations of the Railroad Commission of said State; . . ." As to York Boulevard the decree was as follows: ". . . from conveying, running or transmitting electric power or energy through the lines and wires heretofore erected and constructed by said City of Los Angeles, its agents, servants or employees," until the wires, poles, and equipment of the city are removed to the distance "prescribed by the laws of the State of California and the rules and regulations of the Railroad Commission thereof."

The decree contained a provision upon which the city bases a contention, or rather a suggestion, to which we shall presently refer. The provision is as follows: "Nothing herein contained shall be construed as prohibiting or restraining the City of Los Angeles or its proper boards, officers or agents from carrying into effect any ordinance of said City providing for the removal or relocation of poles, anchors, cross arms, wires, street lamps or other fixtures, appliances or structures owned or controlled by said plaintiff [the corporation in this case] and located in, upon, over or under any public street or other public place of said city."

The ground or basis of the ordinance of March 6, 1917, here involved is the same as that of the interference in the suit in the state court, that is, the right to displace the corporation's property in order that the municipal system may be operated or erected. There is no attempt here, as there was no attempt in that suit, at absolute displacement. The order of the Board of Public Works, issued in accordance with the direction of the ordinance, required the corporation to change or shift or lower its wires to

the detriment of their efficient use, as it is contended. There is some conflict as to the extent and effect which, however, we are not called upon to reconcile. It was stipulated "that the value of the right to exercise the franchises of the Los Angeles Gas & Electric Corporation in the public streets and thoroughfares of the City of Los Angeles exceeded the sum of $3,000 and was in excess of $4,000." And it was testified that if the city in constructing its system proceeds as it has done in ordering the removal of poles and wires, it will cost the corporation between $50,000 and $60,000; but passing by the particular instance of interference and considering the ordinance's broad assertion of right, the contentions of the city and the corporation are in sharp contradiction.

We say "the ordinance's broad assertion of right" to distinguish the narrower right of the city to erect a system of its own. Of the latter right there is no question. The District Court conceded it, indeed praised the project, but decided that it could not be exercised to displace other systems, without compensation, occupying the streets by virtue of franchises legally granted. Thus the only question is whether the city may as matter of public right and without compensation clear a "space" for the instrumentalities of its system by removing or relocating the instrumentalities of other systems. The city asserts the affirmative—asserts the right to displace other systems as an exercise of the police power, and, further, as an incident of its legislative power. It is further asserted that these powers are attributes of government, and that their exercise when not palpably arbitrary, is not subject to judicial interference. "And that 'every intendment is to be indulged in favor of its validity, and all doubts resolved in a way to uphold the law-making power [in this case the city]; and a contrary conclusion will never be reached upon light consideration.'" *Ex parte Haskell,* 112 California, 412.

In counter propositions the corporation urges its franchise and the right it conveys to occupy the streets of the city—rights, it is said, having the inviolability of a contract and the sanctity of private property, not indeed free from reasonable regulation, if such regulation is governmental, but free from molestation or displacement to make "space" for a city system, for that is proprietary. We have, therefore, the not unusual case of rights asserted against governmental power—a case somewhat fruitful of disputable considerations and upon which judgment may not be easy or free from controversy. But there is some point where power or rights must prevail, however plausible or specious the argument of either against the other may be. As for example, in the present case. The city has undoubtedly the function of police; it undoubtedly has the power of municipal lighting and the installation of its instrumentalities (*Russell* v. *Sebastian*, 233 U. S. 195, 202); but function and power may be exceeded and so far as wrongful be restrained. And such was the conclusion of the District Court applying the Constitution of the United States, and such the ground of its judgment.

In what way the public peace or health or safety was imperiled by the lighting system of the corporation or relieved by its removal or change, the court was unable to see and it is certainly not apparent. The court pointed out that there were several lighting systems in existence and occupying the streets and that there was no contest, or disorder or overcharge of rates or peril, or defect of any kind, and therefore concluded that the conditions demonstrated that while the city might install its own system there was no real "public necessity" arising from consideration of public health, peace or safety requiring the city to engage in the business of furnishing light.

The court reasoned and concluded that what the city did was done not in its governmental capacity—an exertion of the police power—but in its "proprietary or quasi-

private capacity" and that therefore the city was sub-
ordinate in right to the corporation, the latter being an
earlier and lawful occupant of the field.   The difference in
the capacities is recognized and the difference in attendant
powers pointed out in decisions of this court.   *Vilas* v.
*Manila,* 220 U. S. 345; *Russell* v. *Sebastian,* 233 U. S. 195;
*South Carolina* v. *United States,* 199 U. S. 437; *New Orleans
Gas Co.* v. *Drainage Commission,* 197 U. S. 453; *Vicksburg*
v. *Vicksburg Waterworks Co.,* 206 U. S. 496, 508.

The city's contentions are based on a confusion of these
capacities and the powers or rights respectively attributed
to them and upon a misunderstanding of the reservations
in the decree of the state court.   The reservations were
made only in prudence, not to define the existence or
extent of powers, and forestall their challenge, but to
leave both to the occasion when either of them might
be asserted or denied.   And it is clear that it was not in-
tended to confound the capacities in which the city might
act and the relation of the city's acts to those capacities.

It is not necessary to repeat the reasoning or the exam-
ples of the cases cited above, by which and in which the
different capacities of the city are defined and illustrated.
A franchise conveys rights and if their exercise could be
prevented or destroyed by a simple declaration of a
municipal council, they would be infirm indeed in tenure
and substance.   It is to be remembered that they come
into existence by compact, having, therefore, its sanction,
urged by reciprocal benefits, and are attended and can
only be exercised by expenditure of money, making them
a matter of investments and property, and entitled as
such against being taken without the proper process of
law—the payment of compensation.

The franchise of the present controversy was granted
prior to 1911 and hence has the attributes and rights
described in *Russell* v. *Sebastian, supra.*   Its source, as
was that of the franchise in that case, is the constitution of

the State and is that "of using the public streets and thoroughfares thereof . . . for introducing into and supplying" a city "and its inhabitants either with gas light or other illuminating light." We said of such that the "breadth of the offer was commensurate with the requirements of the undertaking which was invited. The service to which the provision referred was a community service. It was the supply of a municipality—which had no municipal works—with water or light." And again, "The individual or corporation undertaking to supply the city with water or light was put in the same position as though such individual or corporation had received a special grant of the described street rights in the city which was to be served." We can add nothing to this definition of rights, and, we may repeat, they did not become immediately violable or become subsequently violable.

It will be observed that we are not concerned with the duty of the corporation operating a public utility to yield uncompensated obedience to a police measure adopted for the protection of the public, but with a proposed uncompensated taking or disturbance of what belongs to one lighting system in order to make way for another. And this the Fourteenth Amendment forbids. What the grant was at its inception it remained and was not subject to be displaced by some other system, even that of the city, without compensation to the corporation for the rights appropriated.

We think, therefore, that the decree of the District Court protecting the corporation's rights from disturbance under the ordinance in question must be and it is

*Affirmed.*

Mr. Justice Pitney and Mr. Justice Clarke dissent.