Hajrt, J.
The answer of the respondent sets out 10 affirmative defenses, four of which present three fundamental questions involving the constitutionality of the subway act, five raise questions involving the alleged irregularity and alleged insufficiency of the procedure followed by the relator in attempting to authorize the issuance of the note and bonds, and one presents both constitutional and procedural questions.
I
In the first, sixth and ninth defenses of respondent’s answer it is alleged, in substance, that the proposed note and bonds would be issued to make a gift of the proceeds to the municipally owned Cleveland Transit System and the Shaker Heights Rapid Transit System and would, therefore, be invalid as contrary to Section 6, Article VIII of the Constitution of Ohio, prohibiting laws authorizing any county, city, town or township to loan its credit to, or in aid of, any company, corporation or association. The specific question is, may Cuyahoga County construct a subway to be used by noncounty transportation systems for a nominal rental to the county? The respondent insists that the conveyance by the county of the right to use the subway to noncounty transportation systems with *165 out financial consideration is a gift; that it is also proposed to make a gift of the revenues received from the use of a subway; and that any general benefit to the community will not constitute a valuable consideration.
The issuance of the bonds in question is purportedly authorized by a resolution of the relator and approved by more than 55 per cent of the electors of the county, pursuant to the provisions of the subway act. The resolution of relator necessarily determined that the county’s transportation purposes could best be attained by ownership of the subway by the county and its operation by publicly owned transportation systems under agreements to be entered into, containing such terms and conditions as shall be approved by the relator as necessary to protect and serve the transportation interests of the county as a whole, including rental and use charges, nominal or otherwise, to be paid by such publicly owned transportation systems.
It is conceded by both parties that a gift of a county subway to municipally owned transit systems would be invalid. It is conceded by both parties also that the proposed subway would not be self-supporting, whether it be operated by its owner the county, by the municipality of Cleveland, or by publicly owned transportation systems; and that any rental plan would call for a low or nominal rental.
In view of these concessions, respondent asserts, “nor will general benefit to the community constitute valuable consideration” for the proposed contract, citing the case of City of Cleveland v. Public Library Board of City School District of City of Cleveland, 94 Ohio St., 311, 114 N. E., 247, wherein this court held that the city of Cleveland could not make a gift of real property to the Public Library Board of the City School District of the City of Cleveland, notwithstanding such a gift under the ownership of the grantee *166 would benefit substantially tbe same segment of tbe public. In this connection, however, the respondent can not claim complete support for his position. In that case the conveyance contained a proviso that the title should revert to the city of Cleveland in the event the land so conveyed and the buildings to be erected thereon should cease to be used for library purposes. The court specifically held that there was a valuable consideration to the city in that, under the terms of the city’s conveyance to the library board of the school district, certain costs and expenses were assumed by the library board which validated the conveyance by the city. In that case, the court said:
“The erection of a public library building upon one of these lots and the improvement of the adjoining lot for park purposes will be not only of great value to the city in the furtherance of this group plan project, but will save the city a large sum of money in razing these buildings and improving the grounds and maintaining a public park thereon. It would therefore appear that this is not a gift by the city to the library board.”
Respondent cites in support of his position also the case of Wasson v. Commissioners, 49 Ohio St., 622, 32 N. E., 472, 17 L. R. A., 795, and Hubbard, Treas., v. Fitzsimmons, 57 Ohio St., 436, 49 N. E., 477. In those cases the court held that legislative acts authorizing counties to raise money to secure the location of the Ohio Agricultural Station and to construct armories in the county at the expense of county taxpayers were void because of. the provisions of Section 2, Article XII of the Ohio Constitution, providing for a levy of taxes by uniform rule. The court took the position that, since state armories serve a state purpose and not a county purpose, the financial burden of providing such facilities can not be imposed on the county taxpayer's alone, but must be imposed on the taxpayers of the whole state.
*167 In the instant case, the relator claims that the statutory authority for the construction of the proposed subway and the procedure taken by the county thereunder do not contemplate a gift of county property to any other entity, and that, to validate the transaction as between the county and the cities, it makes no difference that there is no financial consideration passing to the.county from publicly owned transportation systems for its use. Relator claims this question was decided in the case of City of Cleveland v. Library Board, supra.
Besides, this question can not in fact arise until the relator takes action in this respect, and a presumption obtains that the relator will fix terms under which the operation of the subway will be lawful. State, ex rel. Shafer, v. Ohio Turnpike Commission, 159 Ohio St., 581, 113 N. E. (2d), 14; State, ex. rel. Maxwell, Pros. Atty., v. Schneider, 103 Ohio St., 492, 134 N. E., 443.
In State, ex rel. Bowman, v. Board of Commrs. of Allen County, 124 Ohio St., 174, 177 N. E., 271, the court said:
“Manifestly, the law itself cannot be rendered unconstitutional by any possible abuse of it in some particular improvement. The law must be judged by its potential usefulness, and the members of the Legislature are permitted to assume that the public officials who administer it will properly use, and not grossly abuse it.”
II
Respondent in the ninth defense of his answer alleges that, since under the subway act and resolution of the relator pursuant thereto, the subway would be constructed by a county but used by municipally owned transit systems, the act is in conflict with the provision of Section 6, Article VIII of the Ohio Constitution, which prohibits a county from raising money or loaning its credit to or in aid of a joint stock company, *168 corporation or association. Respondent, in elaboration of this defense, asserts that the subway construction plan permits the proceeds of the proposed county bond issue to be expended in constructing the subway for the benefit of transportation systems not owned by the county, and that such plan constitutes aid to a company, corporation or association within the inhibition of the constitutional provision.
This attack raises the question of the constitutionality of that part of the subway act, which provides:
“The Board of County Commissioners * * * shall have the authority to * * * construct, own, lease and operate subways for transportation systems not owned by the county, and may issue * * * therefor * * * general obligation bonds to be- paid in part or in whole by general tax revenues, if 55 per cent of those voting upon the proposition vote in favor thereof, the.taxing authority of subdivisions shall have authority to proceed with the issue of such bonds and the levy of a tax outside of the ten-mill limitation sufficient in amount to pay the interest on and retire such bonds at maturity. * * *
“The Board of County Commissioners may, by agreement with the city council or the proper municipal officer or board charged with operation of a municipally owned transportation system, acquire, construct, own, lease or operate a transportation system or part thereof, and may, both within or without municipal corporations, acquire, construct, own, lease, maintain and operate subways for transportation systems not owned by the county.”
The respondent claims that under the authority of the act, the pertinent parts of which are above quoted, a county may “loan its credit” by issuing bonds to acquire or construct subways for transportation systems owned otherwise than by the county, i. e., by some individual, corporation or association which may *169 be an entity other than a publicly owned transportation system. This court must now determine whether this interpretation may be placed upon the subway act and, if so, whether it is in conflict with such constitutional provision.
This provision of the Constitution has been, since its adoption in 1851, the storm center of much litigation. The clear purpose of the adoption of such provision was to prohibit political subdivisions of the state from aiding in the construction of railroads and similar enterprises.
In the present case, the major part of the transportation system of greater Cleveland or Cuyahoga County is owned by the Cleveland Transit System and the Shaker Heights Rapid Transit System, beneficially owned and operated under indentures to the Central National Bank and the Cleveland Trust Company, respectively, as trustees. The proposed subway would furnish an underground tunnel for these transit systems from their downtown termini, extending in a general eastwardly direction for a distance of approximately one mile. This action involves the legal questions growing out of the relationship which would arise from the ownership and the combined operation of the properties represented by the subway and the two transit systems which would operate through the same.
In the early case of Walker, Solr., v. City of Cincinnati, 21 Ohio St., 14, 8 Am. Rep., 24, which involved the constitutionality of an act of the General Assembly authorizing a city having a population exceeding 150,000 to construct and operate an independent railroad to be wholly built and owned by the city, this court recognized the construction of a railroad as for a public purpose. In that case this court said:
‘ ‘ That it is within the legitimate scope of legislative power to authorize a municipality of the state to aid in the construction of a public improvement such as a *170 railroad, by becoming a stockholder in a corporation created for that purpose, and to levy taxes to pay the subscription, must be regarded as fully settled in this state by repeated adjudication. In the case of C. W. & Z. R. R. Co. v. Com. of Clinton County, 1 Ohio St., 77, the subject was very fully considered; and it was held, that as the state may itself construct roads, canals, and other descriptions of internal improvement, so it may employ any lawful means and agencies for that purpose, among which are private companies incorporated for the construction of such improvements. And it was said that, for much stronger reasons, counties might be authorized to construct works of a similar kind, of a local character, having a special relation to their business and interests. And as the state might construct or authorize the counties to construct these works entire, or create corporations to do it entire, it was held that, as a question of power, each might be authorized to do a part.”
It is apparent, of course, that that case is not directly in point on this question now before the court, but it does indicate the scope of activity in which public corporations may engage. In 1872 the General Assembly passed the Boesel Act (69 Ohio Laws, 84) which declared it lawful for any county to construct a railroad and to borrow for that purpose up to five per cent of the amount represented by its tax duplicate upon the consent of two-thirds of the electors of the county. This act authorized counties, cities, villages and townships to construct such a railroad line, and absorption of short sections of such a line by a private railroad generally resulted.
In the case of Taylor v. Commrs., 23 Ohio St., 22, the Boesel Act was held unconstitutional as being in violation of Section 6, Article VIII of the Constitution.
In the case of Wyscaver v. Atkinson, 37 Ohio St., *171 80, an act authorizing townships to construct a railroad was also held as in conflict with Section 6, Article VIII of the Ohio Constitution. Judge Mcllvaine, in his opinion in that case, said:
“* * # So that it is quite evident that the legislative intent, as well as that of the trustees of Beaver Township, was to make the proposed road a link in a more extended route or line of railway. The same intent is manifested in the fact, that no provision was made for the operating of the proposed road by the township ; but power only was given to lease the same on completion, to any person or persons or company which would conform to the terms and conditions which the trustees should prescribe; and in the event that the road would not be completed with the expenditure of money authorized, a scheme for its sale was provided by the act by foreclosing the mortgage given to secure the bonds; so that the road, after the expenditure of $20,000, might pass into the hands of another ‘person or persons or company.’ * * *
“The purpose and effect of the statute is to unite the means and credit of the township with those of other parties in order to promote a common enterprise, to wit: the construction of a continuous line of railway, which could not be accomplished without such combination of interests.
‘ ‘ Such being the scheme and operation of this statute, it is clearly in violation of Section 6, Article VIII of the Constitution * *
The respondent herein claims that the subway act contains no provision whereby the county is limited to building subways for municipally owned transportation systems, but a county is authorized to build a subway for any transportation system except one owned by the county itself; that the act does not contain separate provisions, one relating to construction for private transportation systems and the other for *172 public transportation systems; and that, since the act authorizes combinedly both constructions, one of which, the construction for a private transportation system, is clearly invalid, the whole act is unconstitutional, citing the case of Taylor v. Commrs., supra. In that case this court said:
“Nor is this the ease contended for in argument, of an act which is susceptible of two constructions, one of which would make it constitutional and the other not. We find this act capable of no other rational construction than the one we have given it.
“Neither can we assent to the proposition that, although the act may authorize the accomplishing of an unconstitutional purpose, that it must, nevertheless, be presumed that it will, in fact, only be used to accomplish what can be done in accordance with the Constitution.
“The authority which it confers, clearly includes the unconstitutional purpose of aiding with the public credit, railroad companies and others engaged in the business of building and operating railroads. If there are lawful purposes to which the credit might be applied, the act gives no means to the officers in whom the authority is vested, of discriminating between what is lawful and what is not. This unconstitutional element vitiates the whole authority.”
The foregoing contentions are serious challenges to the constitutional validity of the subway act. We will now consider the claims of the relator as against this defense of the respondent.
The relator in this connection claims as follows:
“A statute, such as the subway act, which authorizes construction by a city or county of a subway for the use of transportation systems not owned by the county, including street, electric, suburban, or interurban railways, whether privately or publicly owned, is not unconstitutional as authorizing the raising of money for *173 or loaning of the county or city credit to, or in aid of, any company, corporation, or association.
“The construction of a public improvement, with the intention, and even with the legislative direction or authority, that such public improvement shall he operated by a private corporation on terms approved by the public body, does not constitute raising money for or loaning the credit of the public body to or in aid of such corporation. A law authorizing such transactions is accordingly not unconstitutional under Article VIII, Sec. 6 of the Ohio Constitution.”
To support its position, the relator relies on State, ex rel. Campbell, Pros. Atty., v. Cincinnati St. Ry. Co., 97 Ohio St., 283, 119 N. E., 735, which involved the constitutionality of the Bauer Act (106 Ohio Laws, 286). The relator in that case alleged in his petition:
“That said act * * * is null and void on the ground and for the reason that said act contravenes Article VIII, Section 6 of the Constitution of the state of Ohio, in this, to wit, that said act permits and authorizes the city of Cincinnati to raise money for, and loan its credit to, and in aid of, companies, corporations and associations.”
It is true that the court in that case held that the ordinance of the city of Cincinnati, setting up the terms by which a subway was to be operated, was unconstitutional because of the special arrangements for use provided for in that ordinance which had nothing to do with the power of the city to construct the subway even though it was to be used by a private transportation system. In the instant case the terms by which the subway would be used by the publicly owned transportation systems have not been fixed and that question is not now before the court. The courts will presume that such terms, when fixed, will be pursuant to legal and constitutional requirements. State, ex rel. Shafer, v. Ohio Turnpike Commission, supra; and State, ex rel. *174 Maxwell, v. Schneider, supra. And if such terms, when fixed, are not in conformity with constitutional requirements, resort may then be had to the courts on such question.
This feature of the instant case does not present any new questions. In scores of instances, under the Constitution and laws of this state, counties and muni.ipalities have granted franchises and permissive-use contracts to both private and public transportation systems to use bridges and subways owned and operated by such counties and municipalities, all in the interest of facilitating both passenger and pedestrian traffic on such public ways. It is too late to question the power of the proper public authorities to enter into such contracts, although the courts have jurisdiction to review their terms as to questions of good faith and reasonableness.
Furthermore, the relator asserts that, since the proceeds of the note and bonds would be used for the construction of a subway for the use of municipally owned transportation systems and not for privately owned systems, Section 6, Article VIII of the Constitution, has no application-whatsoever, citing as authority the eases of State, ex rel. Leaverton, v. Kerns, Aud., 104 Ohio St., 550, 136 N. E., 217; and State, ex rel. Kauer, Dir., v. Defenbacher, Dir., 153 Ohio St., 268, 91 N. E. (2d), 512.
The Kerns case considered the constitutionality of Section 9880-1, General. Code, which provided for certain county financial support to independent agricultural societies holding annual fairs and exhibitions within the county. Highland County challenged its obligation under this statute, and this court held:
“2. The aid provided by Section 9880-1, General Code, is not for the purpose of furnishing financial assistance to a private enterprise, nor for lending the credit of the state thereto, but, on the contrary, is in *175 aid of a public institution designed for public instruction, tbe advancement of learning and tbe cause of agriculture, and is not in violation of Sections 4 and 6, Article VIII of the Ohio Constitution. ’ ’
In tbe Kauer case, tbe relator sought to require tbe respondent, Director of Finance, to make a certification required by Section 2288-2, General Code, to tbe effect that state public funds were available to tbe Ohio Turnpike Commission for tbe study of an undetermined turnpike project. Tbe respondent challenged tbe right of tbe relator to require tbe certification, on tbe ground that tbe proposed expenditure was not for tbe purpose of building a turnpike but for tbe purpose of making studies concerning tbe feasibility of a proposed turnpike project, and that such expenditure would not be for a public purpose as required by tbe Ohio Constitution and statutes.
This court held that “Section 4, Article VIII of tbe Constitution, does not prohibit tbe giving or loaning of tbe state’s credit to or in aid of a public organization created for a public purpose.”
In bis opinion in that case, Judge Taft said:
“In tbe quoted portion of tbe foregoing section, tbe words ‘individual association or corporation’ are significant. This court has held that, while that portion of tbe section forbids tbe giving or loaning of tbe state’s credit to or in aid of a private business enterprise, it does not prohibit such gift or loan to a public organization created for a public purpose. State, ex rel. Leaverton, v. Kerns, Aud., 104 Ohio St., 550, 136 N. E., 217. In tbe instant case, whether it is a corporation or not, tbe Turnpike Commission is certainly a public organization created for a public purpose. See Cincinnati, W. & Z. Rd. Co. v. Commrs. of Clinton County, supra.
“It follows, therefore, that tbe advancement of funds on behalf of the commission by tbe highway de *176 partment does not constitute a gift or loan of the credit of the state prohibited by this portion of Section 4 of Article VIII of the Constitution.”
In the instant case, under the terms of the note resolution it is indisputable that the subway would be owned by the county, though operated by municipally owned transit systems. This court has consistently held that, although a statute under some applications might be unconstitutional, it will not be held wholly unconstitutional in a case which does not involve an unconstitutional application of the statute. In the case of State, ex rel. Herbert, v. Ferguson, Aud., 142 Ohio St., 496, 502, 52 N. E. (2d), 980, this court stated the rule,- through the opinion of Judge Zimmerman, as follows:
“It was held in Kent v. Perkins, 36 Ohio St., 639, 642, that a statute may be perfectly constitutional where one course of conduct is pursued under it and it will not be invalidated because permitting of another course of conduct which has not been attempted. Likewise, the case of Castle v. Mason, 91 Ohio St., 296, 110 N. E., 463, Ann. Cas. 1917A, 164, suggests the proposition that the constitutionality or unconstitutionality of a statute in a particular case may depend on what has been done under it. ‘A statute may be invalid as applied to one state of facts, and yet valid as applied to another.’ Dahnke-Walker Milling Co. v. Bondurant, 257 U. S., 282, 289, 66 L. Ed., 239, 243, 42 S. Ct., 106; W. & J. Sloane v. Commonwealth, 253 Mass., 529, 534, 149 N. E., 407, 409.
£ 1 Statements appear in other cases to the effect that a court will not anticipate prospective incidents which may never take place, to declare a law unconstitutional. State, ex rel. Martin, Atty. Genl., v. Howard, 96 Neb., 278, 295, 147 N. W., 689, 695; Lehman v. Morrissett, State Tax Commr., 162 Va., 463, 468, 174 S. E., 867, 870; State Road Commission v. Kanawha County *177 Court, 112 W. Va., 98, 107, 163 S. E., 815, 819. And constitutional questions will not be decided until the necessity for decision arises on the record before the court. State, ex rel. Clarke, v. Cook, Auditor, 103 Ohio St., 465, 134 N. E., 655; Bucker v. State, 119 Ohio St., 189, 162 N. E., 802; Wiggins v. Babbitt, 130 Ohio St., 240, 198 N. E., 873.
“Consequently, the court does not consider itself called upon at this time to decide the question of whether the act involved is unconstitutional with respect to conditions not shown to exist. ’ ’
Lastly, as to this ninth defense in the instant case, the respondent contends that the subway act authorizes a loan of public credit to or in aid of a company or corporation in that it requires proceeds of the county bond issue to be illegally used to defray costs of restoration, relocation or duplication elsewhere of existing public utility facilities. It is argued that the owners of utilities in a street have no right to reimbursement if forced to relocate some of their facilities as a result of the construction of the subway.
The answer to this claim must be that if the county is authorized to build the subway under the subway act, the county, acting in a proprietary capacity, must assume and pay whatever damage, if any, is done thereby to other property in the process of such construction, and if that payment does not exceed the reasonable cost of rearranging, relocating or reconstructing such property, the county will only have paid its just debt and will not have made any loan of public credit to or in aid of a company, corporation, or association.
The general rule recognized by the courts throughout the country is that in the absence of contract to that effect there is no power in a governmental subdivision to require public utilities using public streets to relocate their facilities at their own expense to ac *178 commodate the proprietary utility operations of such subdivision. A governmental subdivision in the exercise of its proprietary functions is in the same position as a private utility attempting to force such relocation. City of Cincinnati v. Cincinnati & Suburban Bell Telephone Co., 123 Ohio St., 174, 174 N. E., 586; City of Los Angeles v. Los Angeles Gas & Electric Corp., 251 Ü. S., 32, 64 L. Ed., 121, 40 S. Ct., 76; Milwaukee Electric Railway & Light Co. v. City of Milwaukee, 209 Wis., 656, 245 N. W., 856; In re Gillen Place, 304 N. Y., 215, 106 N. E. (2d), 897; City of New York v. New York Telephone Co., 278 N. Y., 9, 14 N. E. (2d), 831, and cases cited.
In line with this doctrine, this court has held that the operation of a governmentally owned transit system is a proprietary and not a governmental function. Cleveland Ry. Co. v. Village of North Olmsted, 130 Ohio St., 144, 198 N. E., 41, 101 A. L. R., 426; Zangerle, Aud., v. City of Cleveland, 145 Ohio St., 347, 61 N. E. (2d), 720; and City of Shaker Heights v. Zangerle, Aud., 148 Ohio St., 361, 74 N. E. (2d), 318.
The first and tenth defenses of the answer of respondent also raise the question whether the subway act provides for the levy and collection annually through taxation of an amount sufficient to pay the interest on the subway bonds and to provide a sinking fund for their final redemption at maturity, as required by Section 11, Article XII of the Ohio Constitution.
The subway act provides as follows:
“All rentals, payments and fees of every description and all other income, earnings or revenues, received from all persons, firms, corporations and municipal corporations for the use of subways constructed by a county for transportation systems not owned by the county with moneys acquired by the issuance of general obligation bonds shall be paid into a sinking *179 fund of the county for the payment of interest on and the redemption of these bonds at maturity; and to the extent that these funds shall not be sufficient for the payment of interest on said bonds and for the accumulation of a sinking fund sufficient for payment thereof at maturity issued for the construction of subways within and without municipal corporations, the county shall annually levy a tax sufficient for such purposes * *
Section 6 of the bond resolution provides as follows:
“That during the period said note is to run there shall be levied outside of all tax limitations and in addition to all other taxes, a direct tax annually not less than that which would have been levied if said bonds had been- issued without the prior issuance of such note, namely to the extent that all such rentals, payments and fees and other income, earnings or revenues of the said subway shall not be sufficient for the payment of principal and interest, such tax shall be levied in an amount sufficient for such purpose.”
These provisions for a levy of taxes in the event that the income from the subway and other resources are insufficient comply with the constitutional requirement. State, ex rel. Ohio National Bank of Columbus, v. Village of Hudson, 134 Ohio St., 150, 16 N. E. (2d), 266.
in
In the seventh defense of respondent’s answer it is alleged in substance that about 33,000 passengers, using the Cleveland Transit System and the Shaker Heights Bapid Transit System, would use the proposed subway each day, and that, therefore, the subway would not promote the general welfare of all the inhabitants of the county in that it would not serve the entire area of the county, or even a substantial part of it; that, being located in downtown Cleveland, the subway would be of principal benefit and advan *180 tage to the business interests of that section; and that county taxation to pay the costs of the subway under such circumstances would violate the requirement of taxation by uniform rule according to value in Section 2, Article XII of the Ohio Constitution.
It is well established that county improvements may be authorized, constructed and maintained by the county although they may directly benefit only a part of the taxpayers of the county, and the fact that the cost of the construction and management of such improvements is borne by county taxes does not contravene the rule of uniform taxation according to value contained in Section 2, Article XII of the Ohio Constitution. This question was directly decided in the case of State, ex rel. Bowman, v. Board of Commrs., supra, which involved the expenditure of county funds for the construction of water and sewer systems in certain sewer districts in the county. This court granted a writ of mandamus and upheld the validity of the statutes providing for sewer districts covering only a part of the area of the county and payment therefor from county taxes. The eighth paragraph of the syllabus in that case is as follows:
“An ad valorem tax levy upon all the taxable property of a county to pay the principal and interest of bonds issued to provide funds to construct a sewer system for a small territory contiguous to a municipality, which improvement confers no direct benefit to property in the county remote in location from said improvement, does not violate the provisions of Section 2 of Article XII of the Ohio Constitution, requiring all real and personal property to be taxed by a uniform rule, and according to its true value in money.”
In the course of the opinion in that case, Chief Justice Marshall said:
“ * * * The power to levy a general tax throughout the county is authorized by Section 7, Article X of the *181 Ohio Constitution, and is not dependent upon the receipt of direct benefit by the taxpayers of the county or the equal distribution of potential benefits in proportion to the burdens of the tax levied. Cooley on Taxation (4 Ed.), Section 20; Railroad Co. v. Commissioners, 48 Ohio St., 249, 27 N. E., 548; Miami County v. City of Dayton, 92 Ohio St., 215, 110 N. E., 726; State, ex rel. Holtz, v. Commissioners of Henry County, 41 Ohio St., 423; State v. Commissioners, 37 Ohio St., 526.”
Relator has determined that, owing to the fact there is great traffic congestion in one section of the county, namely the downtown section of the city of Cleveland, it is necessary to syphon off or eliminate a portion of the street traffic in that section by constructing a subway to be operated by publicly owned transportation systems within the county and through the several municipalities therein in order to promote the welfare of all the inhabitants of the county who are concerned in transportation into and out of such congested district, and that the county transportation requirements would be best served thereby.
If this is true — a matter to be determined in the sound discretion of the relator — there can be no question that the subway would serve a public purpose and that county taxation to provide for the construction of the subway would not violate Section 2, Article XII of the Ohio Constitution, which recognizes “taxation by uniform rule according to value,” even though many persons or certain areas in the county may not directly benefit from the proposed subway.
Respondent argues also that, whereas Section 4, Article XVIII of the Ohio Constitution, gives municipalities the power to construct and operate subways, the Constitution has given counties no such power and then infers that the doctrine of expressio unius est exclusio alterius applies and, therefore, counties have *182 no such power. These contentions of respondent are answered by the case of State, ex rel. Helsel, v. Board of County Commrs., 149 Ohio St., 583, 79 N. E. (2d), 911, involving the power of a county to own and operate an airport under statutory authority. The decision of the Common Pleas Court of Cuyahoga County in that case is reported in 37 Ohio Opinions, 58. The judgment of that court was affirmed by the Court of Appeals for Cuyahoga County (83 Ohio App., 388, 78 N. E. [2d], 694), and the appeal as a matter of right to this court was dismissed on the ground that there was no debatable constitutional question involved. See City of Akron v. Public Utilities Commission, 149 Ohio St., 347, 354, 78 N. E. (2d), 890. Judge McNamee, the trial judge in the Helsel case, in the course of his opinion, said:
“Plaintiff argues that the foregoing section of the Constitution constitutes a limitation upon the general legislative power of the state, sufficiently broad in scope, to deny the General Assembly the right to confer authority upon counties to own and operate airports because they are public utilities. This argument is predicated upon the erroneous premise that Article XVIII, Section 4, vests exclusive authority in municipalities to own and operate public utilities. To demonstrate the nonexclusive nature of the constitutional grant it is necessary only to refer to the fact that private corporations also may own and operate public utilities. Their power derives directly from the Legislature. Nor can it be said that the authority of governmental bodies to own and operate public utilities is exclusively committed to municipalities.”
This court, since the early days of its existence, has repeatedly held that public transportation is a proper county purpose and function. In the case of Board of Commrs. v. Mighels, 7 Ohio St., 109, 119, this court said:
*183 “* * * a county organization is created almost exclusively with a view to the policy of the state at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice.” (Italics supplied.)
In the ease of Walker v. Cincinnati, supra, this court recognized that municipalities as well as counties have the power to construct and operate railroads as for a public purpose. (See portions- of opinion in that case quoted under Section II of this opinion.)
1.
The remaining defenses of respondent’s answer deal with a variety of procedural questions. In the first, second and third defenses respondent claims that the bond-issue proceedings of the relator were contrary to the provisions of the Uniform Bond Act and fatally defective in that the certificate of maximum maturity of the proposed bonds was not filed before the adoption of the resolution of necessity on August 25, 1953.
Section 2293-10, General Code (Section 133.21, Revised Code), reads:
“Before any resolution, ordinance or other measure providing for the issuance of bonds, notes * * * is passed or adopted, the fiscal officer thereof shall certify to the bond-issuing authority the maximum maturity of such bonds or indebtedness, calculated in accordance with the provisions of the foregoing section, and no such bonds, notes * * * shall be authorized or issued with maturities extending beyond the maturities as thus certified by such fiscal officer. * * *”
Relator contends, however, that that statute does not purport to require the issuance of such certificate of maximum maturity before the resolution of necessity, but only “before any resolution, ordinance, or other measure providing for the issuance of bonds, *184 notes * * * is passed or adopted,” and that the resolution of necessity merely determines the necessity of the issuance of the bonds and is preliminary to submitting the question to the electors.
We are in accord with this contention. No resolution could provide for the issuance of the bonds until they are approved by the electors, and if the certificate of maturity is filed prior to the note resolution authorizing the issuance of the note and bonds, as was done in this case, there is a literal compliance with the statute. See State, ex rel. Wuebker, v. Bockrath et al., Trustees, 152 Ohio St., 77, 89, 90, 87 N. E. (2d), 462.
2.
Respondent in his fourth defense points out that Section 2293-20, General Code (Section 133.10, Revised Code), provides that the resolution of necessity shall contain only one purpose, with some exceptions which do not include subways, and that the resolution in the instant case named ‘ ‘ construction of subways ’ ’ instead of “construction of a subway” as the purpose of the bond issue and was, therefore, fatally defective in that respect, citing State, ex rel. Methodist Children’s Home Assn., v. Board of Education, 105 Ohio St., 438, 449, 138 N. E., 865.
The purpose of the statute is to prevent the union in one act of diverse, incongruous and disconnected matters, having no relation to or connection with each other (see Heffner v. City of Toledo, 75 Ohio St., 413, 426, 427, 80 N. E., 8); to give electors a choice to secure what they desire without the necessity of accepting something which they do not want (see 4 A. L. R. [2d], 626); and to prevent double propositions being placed before a voter having but a single expression to answer all propositions, thus making logrolling impossible (see 4 A. L. R. [2d], 622). In applying the rule, the courts invoke a test as to the existence of a natural relationship between the various structures *185 or objects united in one proposition so that they form “but one rounded whole.” See 4 A. L. R. (2d), 630.
In respondent’s fourth defense he makes claim that the note in question is for the purpose of employing consulting engineers to determine the location and method of construction of the subway, which results in a multiple purpose for which the bonds may not be issued.
This appears to be a frivolous defense. In any public construction project requiring engineering or professional services, such services and their costs are invariably considered as a necessary part of the cost of construction. See State, ex rel. Crabbe, Atty. Genl., v. Middletown Hydraulic Co., 114 Ohio St., 437, 452, 151 N. E., 653; Crawford on Statutory Construction, Section 219.
In the light of these principles, the resolution of necessity in the instant case can not be considered as expressing a multiple purpose. The electors could not have been misled nor were they required to vote on several propositions under a single vote expression. The proposition submitted was whether the county should issue bonds for the construction of a subway or subways.
3.
The fourth, fifth and eight defenses of respondent’s answer raise the questions of the sufficiency of the findings of fact upon which the resolution of necessity was based, and whether relator, having determined it to be necessary to issue bonds to pay the cost of the construction óf a subway for transportation purposes and having determined the necessity for the issuance of a note for the purposes above described and more especially for the employment of engineers to make engineering studies for the location and method of construction of the subway, must make any other or further determination of the feasibility of the con *186 struction of such subway within the debt limitation fixed by Section 307.201, Revised Code, before respondent can be required to execute the note in question.
Relator’s answer to this challenge is that, by the adoption of the resolution of necessity, relator expressly and necessarily determined the advisability of constructing the subway and, on the basis of the presumption of regularity, must be presumed to have considered the necessary facts and satisfied itself as to the sufficiency of such facts, including the feasibility for the construction of the subway, to justify the issuance of the note and the expenditure of the proceeds for location and construction plans.
We think the position of the relator is sufficiently supported by numerous cases based on the presumption that authorities having charge of public construction work have performed their duties and made the surveys and determinations necessary for carrying forward any proposed project before bond legislation is accomplished. See State, ex rel. Shafer, v. Ohio Turnpike Commission, supra (determination of materials to be used in turnpike construction); State, ex rel. Maxwell, v. Schneider, supra (creation of a new school district); County Board of Education v. Moorehead, 105 Ohio St., 237, 136 N. E., 913 (construction of new centralized school house to replace old one-room school houses).
The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public authorities, within the limits of the jurisdiction conferred upon them by law, will be presumed to have properly performed their duties in a regular and lawful manner and not to have acted illegally or unlawfully. All legal intendments are in favor of the regularity of administrative action. 42 American Jurisprudence, 680, Section 240; Bloch v. *187 Glander, Tax Commr., 151 Ohio St., 381, 86 N. E. (2d), 318; State, ex rel. Gerspacher, v. Coffinberry et al., Indus. Comm., 157 Ohio St., 32, 104 N. E. (2d), 1; Wheeling Steel Corp. v. Evatt, Tax Commr., 143 Ohio St., 71, 54 N. E. (2d), 132.
4.
The tenth defense of respondent’s answer raises the question whether, inasmuch as part of the proceedings with reference to the subway bonds, commencing with the resolution of necessity, were taken under Section 2433-3, General Code, which section was repealed, effective October 1, 1953, and the subsequent proceedings were taken under Section 307.201, Bevised Code, which became effective on October 2, 1953, conceding that all such proceedings complied with both Section 2433-3, General Code, and Section 307.201, Bevised Code, the repeal of Section 2433-3, General Code, and the adoption of Section 307.201, Bevised Code, affected the legality of the proceedings.
The answer to this query must be that proceedings properly instituted under existing statutes are “pending proceedings” and are not affected by the repeal of such statutes, where the repealing statute does not provide therefor, but may be completed thereunder as though they had not been repealed. State, ex rel. City of Cincinnati, v. Flick, Aud., 153 Ohio St., 294, 91 N. E. (2d), 673.
5.
In the third defense of respondent’s answer it is alleged that the journal record of the proceedings of the relator of August 25, 1953, was not signed by the three members of relator nor was it certified as being true by its president and clerk, and that these deficiencies invalidated the proceedings.
These deficiencies did not invalidate the proceedings. The requirement of signing city ordinances by the legislative officers presents the same question. It has *188 been held that the validity of ordinances is not dependent upon such signing. Blanchard, Treas., v. Bissell, 11 Ohio St., 96. The question seems to have been settled by the case of State, ex rel. Wuebker, v. Bochrath et al., Trustees, supra. See, also, State, ex rel. Board of Education of Springfield Local School Dist., v. Maxwell, 144 Ohio St., 565, 569, 60 N. E. (2d), 183.
The signing and certification may be made at a later date and if not now done should be done nunc pro tunc.
6.
Finally, in his fifth defense respondent claims that there was a failure on the part of the relator to use reasonable discretion in adopting the resolution of necessity of August 25, 1953. The respondent complains that there was no specific project, but rather alternative suggestions for subways before the relator; that the feasibility of the subway from a constructional and operational standpoint was yet to be determined; that information was not obtained from the county engineer; that, in fact, he was of the opinion that not sufficient facts were available on the necessity of the project, particularly with respect to construction plans, costs, revenues, usefulness, or adverse effect on county freeways and surface transportation service; that there was a prospect of financial loss, not gain; that no permission of any municipality has been obtained to construct a subway under its streets; that no agreements were obtained from feeder lines as to the use of the subway; and that the tentative estimates of costs obtained by relator omitted on their face the expensive work of removing, relocating, replacing and establishing elsewhere all the various properties of private public utilities. This stated defense consists largely of legal conclusions without statement of specific facts. The court can not take cognizance of such *189 indefinite charges bnt in the absence of specific facts must assume as hereinbefore stated that the duties of the relator have generally been performed. At least there is here no basis for declaring the bond-issue legislation invalid on this account.
The demurrer of the relator to respondent’s ansyrer is sustained as to each defense of the answer, and, since by agreement of the parties this ruling is dispositive of all matters in issue, the writ is allowed.

Demurrer sustained and writ allowed.

Weygandt, C. J,, Matthias, Zimmerman, Stewart and Bell, JJ., concur.
Taet, J., concurs in paragraphs one, two, three, four, five, seven, eight, nine, eleven and thirteen of the syllabus and in the judgment.