CITY OF GARLAND et al., Appellants

v.

TEXAS POWER & LIGHT COMPANY,
Appellee.

No. 15747.

Court of Civil Appeals of Texas.

Dallas.

Jan. 27, 1961.

Wyatt W. Lipscomb, Garland, and Earl Luna, Dallas, for appellants.

Burford, Ryburn & Ford, Spencer C. Relyea III, and Clarence A. Guittard, Dallas, for appellee.

YOUNG, Justice.

The appeal is from a temporary injunction restraining the city from interfering

with appellee's asserted franchise right to furnish electric energy to applicants therefor within said city; praying upon final hearing, that such ordinance be declared unconstitutional and void.

The Power Company had an existing line along the North side of Kingsley Road within the city, when on October 22, 1959 it accepted a two-year service contract from Dr. John S. Smale, 3008 South 5th Street, for furnishing of electric current to his clinic, then under construction. Application was made to the city for permit covering this installation.[1] Showing that to provide service to the premises of Dr. Smale it was only necessary to install two poles on East side of the alley at rear of Fifth Street and connect with Power Company line on Kingsley Road. The City Council denied the permit without reason or explanation; and appellee, believing the city's action to be unfounded, brought this suit on December 2, 1959 to determine validity of defendant's refusal to issue permit and the ordinance on which such action was predicated. Restraining order then issued, allowing construction of facilities necessary to provide electric service to Dr. Smale; followed by grant of temporary injunction after the hearing on December 11th, 1959. On basis of the testimony then adduced (which will be noticed later) the trial court found "that plaintiff has a valid and subsisting franchise in the City of Garland, that the refusal of the defendants to grant plaintiff a permit to construct its electric power line to the premises of Dr. John S. Smale is without basis or foundation in law or fact, and that the continued refusal of defendants to grant said permit until final hearing hereof would irreparably damage plaintiff and Dr. John S. Smale." The temporary writ restrained appellants "pending final hearing and determination of this cause * * *" from "enforcing or at-tempting to enforce those ordinances of the City of Garland enacted on March 28, 1949, and March 30, 1949, * * * against the plaintiff by reason of its construction, reconstruction and maintenance of an electric power transmission line from plaintiff's presently existing transmission line which runs east and west on Kingsley Road along the alley immediately west of South Fifth Street, to the premises of Dr. John S. Smale * * *, and * * * from hindering or interfering in any way with the construction and maintenance of said electric power line by plaintiff, its agents, servants and employees * * *."

In August 1915 appellant city had granted a fifty-year franchise to the Power Company for construction, maintenance and operation of electric light and power lines for supplying electricity to said city and its inhabitants, which franchise the city had sought to invalidate in previous litigation. See City of Garland v. Texas Power & Light Company, Tex.Civ.App., 295 S.W.2d 925. The issues there raised were otherwise analogous to the instant suit; this Court at that time affirming validity of appellee's franchise and further, the trial court's order of temporary injunction restraining the city from interfering with necessary construction and installation so as to provide electric service for the North Texas Municipal Water District.

The 1915 Ordinance of the City of Garland granted to appellee "the right, privilege and franchise until August 1st, A.D. 1965, to construct, maintain and operate in the present and future streets, alleys and public places of the City of Garland, and its successors, electric light and power lines with all the necessary or desirable appurtenances, (including underground conduits, poles, towers, wires, transmission lines and telegraph and telephone wires for

---

1. Recited in said application was the following: "The above application is made without admitting the validity of the ordinance passed by your *counsel* of March 7, 1949, March 28, 1949 or March 30, 1949, and any other ordinance attempting to regulate the erecting of poles and tower and the making of electrical connections for service in the City of Garland and without waiving any right to question the validity of any such ordinance."

its own use), for the purpose of supplying electricity to the said city, the inhabitants thereof and persons and corporations beyond the limits thereof, for light, heat, power and other purposes." The 1915 Ordinance further provided: "Section 2: Poles or towers shall be so erected as to interfere as little as possible with traffic over streets and alleys. The location of all poles and towers or conduits shall be fixed under the supervision of the street and alley committee of the City Council or the successors to the duties of that committee, but not so as to unreasonably interfere with the proper operation of the said lines. Section 3: The service furnished hereunder to said City and its inhabitants shall be first class in all respects, considering all circumstances, and shall be subject to such reasonable rules and regulations as the Grantee may make from time to time."

Appellant city had later constructed and is now operating its own municipal light system presently representing a capital improvement of some $4,500,000; having a line already in place in the same alley behind South Fifth Street, poles on opposite side; appellee's poles being diagonally placed. In 1949 the City of Garland passed the ordinance in question purportedly in exercise of its police power regulating the construction and installation of electric facilities, making it a misdemeanor to construct such facilities without first obtaining a permit therefor from the City Council.

Section 10 of the Ordinance provided: "The permit provided for herein may be denied in the discretion of the Governing Body if any of the electrical facilities, appurtenances, apparatus, poles, wires, transformers, cross arms used to conduct, transmit or generate electrical power, energy, or current, or any one of them whether in combination or singly constitutes: (a) a nuisance, a hazard or is likely to become such; or (b) results in duplication of service in an area, addition or portion of the City of Garland, with electric facilities installed, contemplated or planned as extensions of the City's Municipal Electrical Systems; or (c) an interference with the orderly, economic, prudent and useful extension of the electrical facilities, equipment, transmission lines and generating facilities of the municipally owned electrical power plant and distributing equipment, or likely to become such; or (d) a denial or a likely interference with electrical services requested to be furnished by the municipally owned electrical power plant and facilities, or an expressed preference for such municipally owned electrical services; or (e) an unnecessary extension of the transmission facilities; or (f) an extension of electrical services resulting, or likely to result in a loss of domestic and commercial customers, reduced income from investments by the City of Garland in its municipally owned electrical plant and equipment; or (g) is likely to cause any reduction of earning power or capacity or reduction of net income to the City of Garland in the operation of its municipally owned electric plant; or (h) a direct or indirect impairment of any outstanding City of Garland revenue or general obligation bonds, or is likely to result in a reduction of net income available to retire revenue bonds of the City of Garland, and those bonds to be liquidated out of electric plant operation; or (i) an interference with any governmental or proprietary function of the City of Garland; or (j) a direct or indirect condition or situation that might influence the granting, extension, regranting or renewal of any franchise; or (k) unnecessary above ground transmission facilities; or (l) unsightly, unusual, and unnecessary above ground transmission facilities depreciating or likely to depreciate the value of adjoining private and public property; or (m) a possible basis or claim to be a vested right in property or to a contract upon the expiration of a franchise. A determination by the Governing Body that anyone of the foregoing reasons exists shall be sufficient basis for denial of the permit." In 1951 appellant became a "home rule

city" pursuant to Art. 1165, Vernon's Ann. Civ.St.

Points of appeal are, in effect: (1) the court error in grant of temporary injunction "since the effect of the court's order was to destroy the status quo rather than to preserve same"; (2) "in grant of temporary injunction enjoining appellants from enforcing or attempting to enforce the ordinance it enacted on March 28, 1949 and March 30, 1949"; (3) In "enjoining appellants from hindering or interfering in anyway with the construction and maintenance of appellee's power light where appellee's franchise specifically provides that: (here referring to Secs. 2 & 3 of the franchise ordinance already quoted); (4) error in grant of temporary injunction where (a) the area involved in this suit was outside the City limits at the time the Home Rule Charter was granted and (b) when grant of temporary injunction "denies this Home Rule Charter City the right to make rules and regulations in accordance with the laws of the State of Texas." See Arts. 1175, § 12, 1436a, V.A.C.S.

The alley behind South Fifth Street was 20 feet in width, the poles of City and Power Company about 1 foot in diameter. As we have observed, no reason was given for denial of permit as per requirement of the ordinance in question; numerous subdivisions of which were obviously enacted in aid of the city's proprietary function. (Its municipal power plant.) At the hearing, the court heard testimony from the following witnesses: James F. Gregory, Manager, Texas Power & Light Company at Garland; G. R. Coffman, its Distribution Design Engineer; M. C. Cole, Developer of the Addition; Doyle Smith, Planning and Traffic Engineer, City of Garland, and John S. Stiff, its City Manager. Messrs. Cole, Smith and Stiff all testified in general terms that location of utility poles on both sides of a 20-foot alley would increase the hazard incident to vehicular traffic in the alley; the City Manager, though testifying that he had consulted with the City Council in its prior action on appellee's request for permit, did not state that the application was disapproved because the particular construction constituted a hazard; indicating a custom of refusing the application of appellee only when it would result in duplication of lines.

On the other hand, the testimony on behalf of appellee was that its trucks using the alley were 8-feet wide; poles there not being placed in that part of the alley traveled by trucks; that there was no pole opposite the pole located behind the premises of Dr. Smale, the nearest pole being 46 feet away. In fact, we find no direct testimony that the poles in question created a hazard under the circumstances thus shown; Mr. Gregory testifying that he would recommend the location of poles on both sides of the alley under the existing circumstances; Mr. Coffman stating that the line as constructed met the requirements of the National Electrical Safety Code as to minimum distance between center lines; that in his opinion the hazards of vehicular traffic would not be lessened by location of poles only on one side of the alley; that it was common practice to have lines on both sides of alleys in commercial areas; and that the location of lines on both sides of alleys would cause no more obstruction than garbage cans or gas meters. In this connection Mr. Smith, the City's Engineer, testified to being present at the city council meeting when the permit was denied; that no one had asked for an opinion from him on vehicular traffic hazards; admitting that he had not considered the question of hazard as a traffic engineer until shown the sketch at time of the hearing for temporary injunction.

Appellants contend that the temporary injunction issued herein prevented the city from exercising the regulatory power reserved to it under Sec. 2 of appellee's franchise; suspending, as it did, the city's denial of appellee's request for a permit to service the clinic of Dr. Smale during pendency of suit, thus destroying rather than pre-

serving the status quo until final trial. We may assume that appellee has been furnishing electricity to the inhabitants of Garland since 1915, locating poles and making installations under supervision of its City Council without trouble or friction until enactment of these ordinances, consequent upon construction of the municipal plant. Accordingly appellee argues that the last actual peaceful uncontested status of the parties was the operation of the Company's Electrical facilities under its franchise, including the extension of facilities where necessary to acquire new customers; this being the status quo to be preserved pending appellee's attack upon the allegedly void and unconstitutional ordinance. Appellee insists, in other words, that the City's refusal to permit the Power Company to extend its service to Dr. Smale was a disturbance of the status quo which the trial court restored by the order appealed from.

■ Appellee well states it to be settled law in Texas "that the status quo which is preserved by a temporary injunction may be either a condition of action or a condition of rest." 24–A Tex.Jur. (Injunctions) § 16. In the latter case the party applying for relief seeks only to prevent certain acts by another party. Pendleton v. Crabtree, Tex.Civ.App., 214 S.W.2d 675. Where, however, as appellee correctly asserts the status quo is a condition of action, the moving party seeks not only to prevent certain acts by another moving party, but also to protect his right to engage in a certain course of conduct. See City of Garland v. Texas Power & Light Company, supra; Lewis v. Texas Power & Light Company, Tex.Civ.App., 276 S.W. 2d 950. In the case last cited the Power Company had sought a temporary injunction to restrain Lewis from interfering with a survey of his land by it prior to condemnation. We affirmed the trial court's issuance of injunction on ground that the Power Company had a statutory right to condemn Lewis' land and therefore the implied right to enter upon it for

purpose of the survey; also that the prime purpose of the restraint was to protect the Power Company's right to enter upon Lewis' land. And by analogy, says appellee, the primary purpose of the injunction here is to protect its franchise rights in the City of Garland. Further apropos, is the following statement by this court in Texas Pipe Line Company v. Burton Drilling Company, Tex.Civ.App., 54 S.W.2d 190, 193, that the status quo in cases of this nature "is a condition not of rest but of action, and the condition of rest is what will inflict the irreparable injury complained of, in which circumstances courts of equity may issue mandatory writs before the case is heard on its merits."

Appellant cannot seriously contend that its authority for denial of permit derives from franchise provisos. In Section 2 thereof, poles and towers are to be so erected as *to interfere as little as possible* with traffic over streets and alleys. Location of all poles or conduits to be fixed under supervision of the city street and alley Committee *but not so as to unreasonably interfere with the proper operation of said lines*. In Section 3 the service furnished to the city is to be subject to such reasonable rules and regulations as the "grantee" (Power Company) may make from time to time. These provisions indicate or the trial court could have concluded, that while the city may exercise regulatory power over installations (placement in street or alley, for instance) it cannot deny altogether the Power Company's right to use the public streets and alleys to serve its customers.

■ At this juncture, the issue before us narrows to a consideration of defendant's ordinances, whether reasonable or unreasonable, either on their face or in practical operation. We recognize that "the grant by a municipality to a public service company of the right to use streets does not divest the municipality of its police power over the grantee in relation to its use of such streets." 12 McQuillin, Mu-

nicipal Corporations, Franchises, § 34.74. However, "it is elementary that an exercise of the police power, in order to be valid, must be reasonable; unreasonable regulations cannot be sustained under the power." 12 McQuillin, Municipal Corporations, Franchises, § 34.75. Nor can the police power be used by the city to deprive the franchise holder of any essential rights and privileges acquired thereunder. Northwestern Telegraph Exchange Co. v. City of Minneapolis, 81 Minn. 140, 83 N.W. 527, 86 N.W. 69, 53 L.R.A. 175.

■■ The trial court under the testimony adduced could have concluded that these ordinances as applied, tended to have such effect; that, is to impair vested rights. While the city has statutory authority to erect and operate its own municipal plant for furnishing electricity to its inhabitants, despite a prior grant to a public utility, the law guarantees an equal opportunity for competition. City of Farmersville v. Texas-Louisiana Power Company, Tex.Civ. App., 55 S.W.2d 195. And where, as here, appellant in an assumed governmental capacity has denied a permit to the rival franchise holder for installation of its electric facility, it must keep itself well above the suspicion of thereby endeavoring to favor its own. Appellant cannot invoke the police power to further its own proprietary interest. City of Los Angeles v. Los Angeles Gas & Electric Corporation, 251 U.S. 32, 40 S.Ct. 76, 64 L.Ed. 121.

■■ It may also be assumed that the city's denial of permit has basis in possible hazards to vehicular traffic in the alley, Sec. 10–A of the City Ordinance is word-ed "hazards or likely to become such"; containing no standard to govern the City Council's exercise of discretion in grant or stay or permit on that ground.[2] In this connection, we agree with appellant that before the court can interfere with operation of a City Ordinance it must clearly appear to be arbitrary, unreasonable and an abuse of the police power; the burden of showing this, resting upon the party attacking same. Even so, the court's award of injunction may be sustained on application of the doctrine well stated in Barrington v. City of Sherman, Tex.Civ.App., 155 S.W.2d 1008, 1010 (writ ref.): "The applicable rule, in our opinion, was announced by our Supreme Court in Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 654, 70 L.R.A. 850, where the Court, among other things said: 'The reasonableness or unreasonableness of many ordinances will appear on their faces, and the court may, upon mere inspection, pronounce them to be valid or invalid. In others the question may depend upon their operation upon particular persons or conditions of fact which cannot be known to the court until made to appear by evidence. Their effect may be just and reasonable in general, but in particular instances may be arbitrary and oppressive to the extent of invading fundamental rights. Evison v. Chicago, etc. Ry. Co. [45 Minn. 370], 48 N.W. 6, 11 L.R.A. 436; State v. City of Trenton [53 N.J.L. 132], 20 A. 1076, 11 L.R.A. [410] 412. In such cases the court can only determine as to the validity or invalidity of the ordinance when the facts upon which the question depends are established; and if they are in dispute, they are to be determined like other matters of fact. * * * ' ".

2. In this connection appellee says that: "Since the construction of any utility line will create some hazard, the only way in which their construction may be reasonably regulated is by defining the hazard which is sought to be avoided. Even then, the City cannot, consistently with the availability of electric service to its citizens, impose unreasonable restrictions upon the facilities used to provide such service; *only construction which results in hazards not normally attendant upon the operations of a utility may validly be prohibited.*" (Emphasis ours.)

Appellants' further points have been duly considered but are overruled without discussion.

Judgment of the trial court is accordingly affirmed.